## TEXAS & P. RY. CO. v. RHODES.

(Circuit Court of Appeals, Fifth Circuit. December 10, 1895.)

No. 398.

**1. ACTION AGAINST RAILROAD COMPANY—INJURY TO EMPLOYE—COUPLING CARS.**
In an action against a railroad company for injuries received by an employé, while coupling cars, through the disparity in heights of the drawheads of the cars, which was alleged to be due to the sagging of one of the drawheads, caused by defects in the carrier iron, defendant asked the court to charge that defendant was not bound to furnish plaintiff absolutely safe machinery, but owed him the duty of furnishing such as would be reasonably suitable, and to exercise ordinary care to see that it was kept in like condition, and that, in determining this, the jury might consider whether it was usual for defendant to have on its line cars with different heights of drawheads, and also whether those engaged in the transportation and inspection of cars would, in the exercise of reasonable care, consider such defects as were shown by the evidence as such that would likely occur which might be reasonably anticipated by employés. *Held*, that it was error to refuse such charge, the substance thereof not being covered by any charges given.

**2. SAME.**
One paragraph of the charge conveyed the idea that if plaintiff actually knew the condition of the drawhead on the defective car, he could not recover, but that if he did not know which particular car he was coupling, and did not know whether the defective drawhead in that car had been repaired, he would be free from contributory negligence. The evidence was conflicting as to whether plaintiff did identify this car, and as to whether he should have identified the car, or known whether it had been repaired. *Held*, that it was error to refuse to charge that, though the drawhead had been allowed to become lower than it should have been, plaintiff could not recover, if he knew of this fact, or should have known of it by the exercise of reasonable care.

In Error to the Circuit Court of the United States for the Northern District of Texas.

T. J. Freeman, for plaintiff in error.

D. W. Humphreys and W. P. McLean, for defendant in error.

Before McCORMICK, Circuit Judge, and BOARMAN and SPEER, District Judges.

BOARMAN, District Judge. Plaintiff below filed his original suit in the district court of Callahan county, Tex., and it was subsequently removed by the defendant to the circuit court of the United States for the Northern district of Texas. Therein judgment was had for plaintiff, and the defendant company, now plaintiff in error, brings the matter up on error to this court. The cause of action of defendant in error is shown by his amended petition, filed in this court after the removal, to be as follows:

"For that whereas, heretofore, to wit, on the 18th day of August, 1893, plaintiff was engaged in the service of defendant as brakeman on one of its freight trains, and while in the discharge of his duties as such brakeman attempted to couple two freight cars on defendant's said road, and while attempting to effect said coupling, without any fault on his part, his left hand was, by reason of the defect hereinafter set forth and alleged, caught between the drawheads of said cars, and was so badly mashed and crushed

that it became necessary to have the greater part of said hand of plaintiff amputated. * * * By reason of the negligence of the defendant, its agents and employés, the carrior iron which supported one of the drawheads was defective. It was bent down, and the rods or bolts which supported it had been worn and loose, and the nuts on said bolts had worked down, and allowed said carrier iron to sag and become lower than it should have been, and by said sagged and lowered position of said carrier iron the said drawhead, which was supported by said carrier iron, also became and was four or five inches lower than it should have been, and was thereby rendered more difficult and dangerous to couple. From the causes aforesaid, plaintiff, in attempting to effect said coupling, as aforesaid, had his hand caught by said lowered and defective drawhead, and pressed against the drawhead on the car to which he was trying to couple the car with the said defective drawhead, and his said hand was crushed as aforesaid. Had said drawheads both been in proper condition and position, plaintiff could and would have effected said coupling without injury to himself. Plaintiff did not know of said defective drawhead, carrier iron, and bolts and loosened nuts, nor did he have an opportunity to know of said defects before said injury; but all of said defects were known to the defendant, or by reasonable diligence could have been known to defendant."

Defendant's answer is, substantially, a denial of all and singular the allegations in plaintiff's petition. The plaintiff in error presents a number of assignments of error,—some of them urging objections to the charge of the trial court, and others because of the refusal of the court to give certain special instructions to the jury. The transcript shows fully, in aid of the bills of exception, all the evidence heard on the trial. The only material issue of fact, not involved in conflicting testimony, is as to the fact that the defendant company, in its transportation of cars, often hauled cars of its own, as well as cars belonging to other railway companies, with drawheads, when in good condition, with a difference in their height of as much as three or four inches. The material issues of fact involved in conflicting evidence are in relation to the incidents connected with the drawheads of the cars that were being coupled at the time plaintiff's hand was injured; as to the sagging of one of said drawheads, in consequence of a defective carrier iron; as to whether there would have been any disparity in the heights of said drawheads if the sagging drawhead had been kept in good condition; as to how far the drawhead of the water car had dropped, if it had fallen at all, by reason of the sagging of the carrier iron below the drawhead on the other car; as to whether such disparity in the heights of the said drawheads, if it was caused, as plaintiff alleges, alone by the sagging of the defective carrier iron, was greater than the plaintiff would have sometimes encountered when, in the line of his daily work, he might be engaged in coupling drawheads in good condition but of unequal heights; as to whether the defect, if there was any, shown to exist in the drawhead of car 04, was such a defect as might reasonably come about, or occur unexpectedly, or occur at such a time, or in such a way as to make it impracticable for the company to have immediate knowledge of its existence, and to seasonably repair it; as to whether the drawhead on car 04, having gotten, unknown to Rhodes, in bad condition, the company was guilty of negligence in not repairing it at an earlier day; as

to whether drawheads on defendant's cars, or foreign cars in its use, when in good condition, sometimes showed as much disparity in the heights of the drawheads as six or seven inches.  In order to make more complete the above summary of the material issues of fact, we will add what the plaintiff himself says, substantially, in relation to the proximate cause of his injury.  He says the drawhead of the car 04 was $4\frac{1}{2}$ inches, though he did not measure or see it measured, lower than the other car to which he was coupling it, and that that difference was caused by the sagging of the defective carrier iron; and in further locating the proximate cause he said that, after he had made the coupling, "my hand was caught from the fact that when I started to take my hand out of the way, the lower part of the drawhead struck it, and jammed it against the link."  The allegations of his petition show that:

"Said drawhead, as the consequence of the defective carrier iron, had fallen four or five inches lower than it should have been, and was therefore, by reason of its being four or five inches lower, rendered more difficult and dangerous to couple.  From the causes aforesaid plaintiff, in attempting to effect said coupling as aforesaid, had his hand caught by said lowered and defective drawhead, and pressed against the drawhead on the car to which he was trying to couple the car with said defective drawhead, and his hand was crushed as aforesaid."

The refused charges which we will consider relate to the parts of the court's charge found in paragraphs 2, 3, and 5, below:

Paragraph 2: "A railroad company is bound to use ordinary care to furnish safe machinery and appliances for the use of its employés in operating its road, and if ordinary and reasonable care was not used by the company, it would be responsible for the injuries to its servants caused by such neglect."

Paragraph 3: "An employer of labor, in connection with machinery, is not bound to insure the absolute safety of the appliances which he provides for the use of his employés, nor is he bound to supply for their use the best and safest or newest of such appliances, but he is bound to use all reasonable care and prudence for the safety of those in his service by providing them with machinery reasonably safe and suitable for use; and the like care devolves upon the master to keep it in repair.  By 'ordinary care' is meant such as an ordinarily prudent man would use under similar circumstances."

For the purpose of considering, later on, another assignment of error, we recite here the fifth paragraph of the court's charge, as follows:

Paragraph 5: "An employé assumes the risks naturally incident to his employment, and if the defects in the said drawhead were open and known to plaintiff, he cannot recover.  If the evidence convinces you that plaintiff had previously handled that car as brakeman, and knew the condition of its drawhead, he cannot recover, unless facts and circumstances had intervened between his former use of said drawhead and the time of his injury that led him to believe said car had been repaired in the matter of the drawheads."

In urging objections to the third paragraph, the counsel for plaintiff in error does not deny the correctness of the propositions of law announced therein; but he very earnestly contends that the law in such propositions is too abstractly and briefly stated by the learned judge, that the propositions are simply bare statements of abstract

principles of law, and in failing, as they do, to bring the real issues clearly to the attention of the jury they are misleading.    Said counsel, fearing that the jury might not be sufficiently advised by the judge's charge as to the rules of law applicable to the material facts, and desiring that they might have the benefit of a more liberal amplification of the court's abstract propositions of law, disclosed in said paragraph, unsuccessfully requested the court to charge as follows:

(5) "The jury are instructed that defendant was not bound to furnish plaintiff absolutely safe machinery, but owed him, in that respect, the duty of furnishing him such as would reasonably be suitable for the purposes for which it was intended, and to exercise ordinary care to see that same was kept in a like condition.   In determining this question, you can look to all the testimony, and take into consideration the fact as to whether or not it was a usual thing for defendant to have cars on its line with different heights of drawbars; and you may also take into consideration as to whether or not those engaged in the transportation and inspection of cars, in the exercise of reasonable care on their part, would consider such defects as may be shown by the evidence in this case as such that would likely occur in the business of railroading, which may be reasonably anticipated by those engaged in the business of handling the cars."

If the refused charges recite correct propositions and rules of law, and if the matters therein contained, or the substance thereof, are not covered by the charge given above, we see no reason why the judge should not have given the refused charge.    We think it announces correct propositions of law, and carries with it a warrantable illustration of the principles laid down in the judge's charge, and the effect of it would have been to aid the jury in applying the rules of law, sharply, to the material issues of fact upon which either party may rely for relief.    The supreme court, in a number of cases,—notably in Pinkerton v. Ledoux, 129 U. S. 346, 9 Sup. Ct. 399; Thorwegan v. King, 111 U. S. 549, 4 Sup. Ct. 529; Pleasants v. Fant, 22 Wall. 116; Railroad Co. v. Ward, 10 C. C. A. 166, 61 Fed. 927,—and this court in Railway Co. v. Bryant, 6 C. C. A. 138, 56 Fed. 803, having an occasion to discuss objections, similar to those we are now considering, to the charge and refusal to charge of the trial judge, has laid down some rules, with the view of advising the trial judge of the necessity of instructing the jury sharply and clearly as to the law applicable under the pleadings and material issues.    Among the rules laid down in repeated decisions of the federal courts, which relate to the duties of the trial judge, to the suitors in the pending case, it is well established that, when a special charge is requested, and the charge recites sound propositions of law, applicable to the material issues of the case, and the special charge, or the substance thereof, has not been covered in the court's charge, the same should be given to the jury. The trial judge and the jury should co-operate for the attainment of a common purpose,—that is, to correctly and justly reach a decision based on all the material evidence and on all the issues of law applicable to that evidence.    And it may be said to be as well established, in the practice of the federal courts, that the trial judge who is content to limit the valuable aid and services which he owes to the suitors in a pending cause simply to propounding to the jury, in composite form, and possibly in form too concrete for their thorough appre-

hension, general principles and ordinary rules of law, applicable only in a general way to the proof in the case, may sometimes fail to come up to the full measure of his usefulness, in co-operating with the jury, so that they may not err in applying his instructions to all the proof upon or out of which a verdict for plaintiff or defendant may be resolved. These suggestions as to the obligation of the trial judge are emphasized by other well-known rules laid down in the reported decisions of the federal courts. In the case of Railway Co. v. Bryant, 6 C. C. A. 138, 56 Fed. 803, this court, in dealing with the trial court's refusal to give a special charge, in a personal injury suit like this, and in giving emphasis to the rules to which we have briefly referred, said, in concluding its views on the subject-matter of such rules:

"Therefore it is the duty of trial courts to bring these real issues clearly to the attention of the jury; and especially in those personal injury cases, where the liability rests, often, not on any issue as to the fact or extent of the injury, but on the proof of negligence on the part of the party sued, care should be taken to bring to a focus, on the real issue in the case, the light of instructions applicable to all the material evidence on that issue."

The force of the counsel's exception to the court's refusal to give the special instructions recited above, and the applicability of the rules of law herein suggested, will be more clearly recognized when we consider that it was incumbent on plaintiff to prove, as he has substantially alleged, that the defect in the carrier iron was the sole cause of the disparity in the heights of the drawheads, and that such defect made that coupling more difficult and dangerous than it would have been if the drawheads, being in good condition, had been about four inches apart, and that the proximate cause of his injury inhered in and sprung out of the said defect,—that is, that his injury is traceable, without an intervening cause, to that defect,—and that there was negligence on the part of defendant company in allowing the defect to occur, and in not more readily and diligently repairing it. We suggest that such was the burden of proof imposed, under the pleadings, on the plaintiff, because, unless his failure to extricate his hand quickly enough to avoid the injury was solely attributable to the sagging iron, and not because of the disparity between the heights of the drawheads, he could not recover. Now, it may be that a just consideration of the evidence would show that the proximate cause of the plaintiff's injury inhered in and sprang out of the defect caused by the sagging carrier iron; but for all the jury could have learned from the conflicting evidence, it may be that if Rhodes had then been engaged in coupling two drawheads, in prime condition but of unequal heights, and had done just the acts which he said he did, and exercised only the same skill in trying to extricate his hand, that his hand would have, as readily, been crushed; that is, the degree of skill, and the acts which he exercised and did in making that coupling, would not have made him more successful in extricating his hand if the drawheads, being in good condition, had been of such unequal heights as he sometimes found in the line of his daily work.

Plaintiff in error assigns further error of the court in refusing the following instruction:

(5) "The jury are instructed that, although the drawhead of the water car 04 had been allowed to become lower than it should have been, yet if plaintiff knew of this fact, or should have known of it by the exercise of reasonable care on his part, then he cannot recover."

We think the refused charge recites a correct proposition of law which was not covered in the main charge; that the matter therein contained, or the substance thereof, not having been covered in the paragraph 5, which we have cited with paragraphs 2 and 3 of the judge's charge, there was error in not giving the charge. In paragraph 5 the idea was conveyed to the jury that if Rhodes actually knew of the condition of the drawhead on water car 04 he cannot recover. It is true that Rhodes said he did not know that he was coupling water car 04 when he was hurt; but there were denials of that statement in the evidence and circumstances. Bearing in mind that Rhodes could in no event recover if he failed to free himself from the charge of contributory negligence; that the law, in relation to such negligence, will charge an employé, like Rhodes, with knowledge of not only such things as he may actually have knowledge of, but it will impute knowledge to him of such things, in and about the cars that he was daily and hourly handling, as he could know, or have knowledge of, if he exercised reasonable care in the use or handling of the machinery furnished by the master, and that his failure to know the defects in such things, if established, would not, of or in itself, free him from such negligence; and bearing in mind, further, that, though he swore he did know of the defective drawhead, and did not know he was coupling car 04 when he was hurt, there were evidential conditions and circumstances, shown to have attended him daily, if not hourly, in the line of his employment, which might have put at issue the truth of his statement, and might have led the jury to believe, even though Rhodes may not have actually known he was coupling car 04, or may not have actually known whether or not the defective drawhead of said car had been repaired, yet, under all the circumstances, he, with or in the exercise of reasonable care, should have known of such material things. Considering, too, that paragraph 5 seems to convey the idea that if Rhodes did not actually know which particular car he was coupling, and did not know actually whether or not the defective drawhead in car 04 had been repaired, he would be free from contributory negligence; and recurring to what we have said as to the duties of the trial judge, and as to the conflicting evidence on material issues in this case,—we conclude that the trial judge, in aid of the common purpose of the court and jury, should have given the two charges which were refused over the objections of the plaintiff in error. The special instructions herein cited should have been given to the jury. Therefore, judgment below is reversed, with costs, and the cause remanded, with instructions to grant a new trial.