PEOPLE'S BANK OF GREENVILLE v. AETNA INS. CO.

(Circuit Court of Appeals, Fourth Circuit. May 5, 1896.)

No. 154.

1. FIRE INSURANCE—OBJECTIONS TO PROOFS OF LOSS—WAIVER—PLEADINGS AND PROOFS.

After a loss the insured made out and sent to the company proofs of loss, in attempted compliance with the requirements of the policy, and these proofs were set out in the complaint as part of his case. An objection to the competency of the notary who certified to the proofs of loss having been sustained, plaintiff was allowed to amend by alleging a waiver by the company's agents of the notary's disability. *Held* that, under these circumstances, and in the state of the pleadings, plaintiff was not entitled to introduce evidence that from the beginning the company had elected to contest the claim as fraudulent, so that no proofs of loss whatever were necessary.

2. SAME—CERTIFICATE OF NOTARY—RELATIONSHIP TO INSURED.

A notary who has married the first cousin of the insured is "related to" him, within the meaning of the policy, so as to be disqualified to give a certificate to accompany the proofs of loss.

3. SAME—DISABILITY OF NOTARY—EVIDENCE OF WAIVER.

Proof that the insured, after the fire, stated to an agent of the company that a certain person, who was a notary public, had married insured's first cousin, is no ground for implying a waiver of the disability of such

notary, because of the relationship. to make the certificate required by the policy, when it appears that he was not the magistrate living nearest the place of the fire and there is no evidence that the agent knew he was the one before whom the proofs of loss were to be made.

4. SAME—WAIVER OF PROOFS.
The making of a thorough investigation by the insurer on its own account, before receiving the proofs of loss, is no evidence of a waiver of the requirements of the policy in respect to such proofs.

5. SAME.
The mere fact that the insurer has been informed by a person of the highest respectability that, by his own inspection, it was impossible that the 100 bales of cotton insured could have been in the building at the time of the fire, does not so irresistibly lead to the conclusion that the company will resist the claim as to absolve the insured from making proofs of loss as required by the policy.

6. TRIAL—DIRECTION OF VERDICT—NONSUIT.
In the federal courts, it is the duty of the judge to direct a verdict for defendant when, upon any view that can properly be taken of the facts which the evidence tends to establish, he would feel obliged to set aside a verdict for plaintiff if one were rendered. And if the court, instead of directing a verdict for defendant, merely nonsuit the plaintiff, the latter cannot complain.

In Error to the Circuit Court of the United States for the District of South Carolina.

This was an action at law by the People's Bank of Greenville, S. C., against the Aetna Insurance Company on a policy of fire insurance. The action was brought in a state court of South Carolina, and was removed to the United States circuit court, which thereafter denied a motion to remand. 53 Fed. 161. The trial of the cause in that court resulted in a verdict for plaintiff, and, a motion for a new trial having been denied, judgment was entered on the verdict. Defendant then brought the case on writ of error to this court, which, on May 22, 1894, reversed the judgment, with directions to grant a new trial. 8 U. S. App. 554, 10 C. C. A. 342, 62 Fed. 222. Upon a second trial the court directed a nonsuit at the close of plaintiff's evidence, and plaintiff then sued out a writ of error to this court.

J. S. Cothran and M. F. Ansel, for plaintiff in error.
George M. Trenholm, for defendant in error.

Before GOFF, Circuit Judge, and HUGHES and PAUL, District Judges.

GOFF, Circuit Judge. Certain questions connected with the matter in controversy in this case have been heretofore considered by this court. At that time the policy in suit was construed, and the law applicable to it and the facts as then presented was announced. With the opinion then filed we are satisfied, and it will now be adhered to. 8 U. S. App. 554, 10 C. C. A. 342, 62 Fed. 222. The cause was then remanded, with directions that a new trial be had. The plaintiff below, with leave of the court, amended its complaint; the amendment consisting, in substance, of an allegation of the waiver on the part of the insurance company, defendant below, as to the alleged disability of Watson to give the certificate of

loss referred to in the policy of insurance.    The case came on to be again tried to a jury at the September term, 1895, held at Greenville, and, after the plaintiff had offered its evidence, the defendant moved the court for a peremptory instruction for a verdict in its behalf; claiming that no such facts had been established by the testimony as warranted the court in submitting the issues raised by the pleadings to the finding of the jury.    The court directed a nonsuit, and dismissed the plaintiff's complaint.    To this action of the court the plaintiff excepted, and it, as well as the rejection of certain testimony hereafter referred to, is assigned as error.    We do not deem it necessary to again recite the facts relating to the controversy, and in that particular we refer to the opinion of this court, reported above.

The plaintiff in error insists that the court below erred in rejecting the testimony of certain witnesses offered by it, the object of which was to show that the insurance company had, by its agents, waived the disability of Watson to give the certificate of loss, as alleged in the amended complaint, or that said agents had, in fact, by their conversation with the insured and their declarations to others, induced him to believe that the company, thinking the loss a fraudulent one, would not adjust it, and that therefore it was not necessary for the insured to comply with the terms of the policy relating to the proofs and certificate of loss.    That such evidence—the statements of duly accredited agents—is, under certain circumstances, admissible, for the purpose mentioned, will not be denied; but we think it is equally as clear that the testimony excluded was not, under the pleadings, permissible in this case. The object of the evidence tendered was to show that from the beginning—from a few days after the fire—the insurance company had elected to contest the claim upon the ground that it was fraudulent; and yet it appears that the party insured, some days after such declarations are said to have been made, prepared and sent to the company the proofs of the loss, in an effort to comply with the requirements of the policy, and at the same time sent the certificate made by Watson, which it was claimed had been waived by virtue of the said statements of such agents.    In this connection, it is well to keep in mind the fact that the plaintiff below alleges, in its complaint, that the proofs of the loss were duly made as required by the policy; and it should also be remembered that the only waiver claimed in the pleadings is as to the disability of Watson to give the certificate relative to the loss referred to in the contract of insurance.    As to the proofs of the loss, the evidence rejected was, under the pleadings and circumstances of this case, plainly inadmissible; and it is at least not apparent to us that it could have been justly considered in connection with the questions relating to the alleged waiver of the disability of Watson.    The proofs of the loss, returned by the insured and set out in the complaint, were necessary to the case as made by the plaintiff, had been put in evidence by it, and were duly considered by the court below in passing on the matters now complained of.    It may be, as is claimed by the plaintiff in error, that a party seeking to recover for

a loss under a policy like the one now in suit may, under certain circumstances, show a waiver by the insurance company of the proofs of the loss, even though such proofs had been made and filed; but, surely, in such a case, the pleadings as made by the plaintiff, and the evidence as offered in support thereof, would bear no resemblance to the record of this cause as we now have it before us. We find no error in the exclusion of the testimony offered by the plaintiff below, as set forth in the bill of exceptions, and this will render it unnecessary for us to consider the points, suggested and so ably discussed by counsel, concerning the powers of agents, and their ability to bind their principals, as also the questions relating to the requirements of the rules of this court concerning the preparation of bills of exceptions and assignments of errors.

The court below, in passing the order directing a nonsuit, filed an opinion which so fully covers the points raised in the assignments of error not above disposed of, and so clearly discusses the questions involved in this controversy, that we indorse it, and quote its main features as part of this opinion, as follows:

"We are dealing with a contract made between parties fully able to contract. The question is, have the terms of that contract on both sides been complied with? The policy provides for the production of proofs of loss, certified in a certain way, if that be required. Not waiting for such requirements, the plaintiff furnished the proofs of loss. The defendant objects to the form of the proof as insufficient. It is said that, inasmuch as the proofs of loss were not required, those so furnished can be treated as surplusage. But we find that on the 23d of July the defendant did require that proofs of loss be furnished, with certain details as to the character and amount of loss; and, as the plaintiff did not then furnish them, in order to sustain its position, it must hold that those theretofore furnished were in accordance with the terms of the policy, and that the information furnished by it after the 23d of July was simply amendatory of, additional to, and forming part of the proofs already furnished. The policy required that the proofs must be certified to by a magistrate residing nearest to the place of fire, not related to the party furnishing the same, and not interested in the claim. Assuming that the proofs furnished by the plaintiff were those required by the policy, the question is, have the requirements of the policy been complied with? I would remark, in this connection, that the insured virtually admitted, in the letter of July 23, 1892, that they were not strictly in accordance with the requirements of the policy. He could have said, and, if he intended to stand upon them, he would have said, that they were sufficient, and that he would make no amendment thereto. But he did furnish the information desired. * * *

"The question whether Watson was related to Benson, in the sense stated in the policy, is a new question, and therefore comes up for decision for the first time. As the circuit court of appeals, in its decision in this case, assumed that Watson was a relative of Benson, in the sense of the policy, I will adhere to that expression, and rule that, in the sense of the policy, he was related to Benson. Then, has this objection to the proofs of loss been waived by the defendant? It is said that there is evidence tending to show that the insurance company waived this provision of the policy upon these grounds, viz.: That Mr. Rees, the adjuster of the Aetna Insurance Company, was informed by Mr. Benson, in Greenville, that Watson had married his first cousin. This information was conveyed to Rees some days anterior to the production of the proofs of loss. There is no evidence whatever that Rees then knew, or had any reason to know, that Watson would be the justice before whom Benson intended to make his proof of loss, and there was no occasion for him then to state to Benson that he would or would not accept proof taken before Watson. It is in evidence that, after this information was received by Rees, he furnished Benson a form of proof, and notified him

that the conditions of the policy must be complied with. I think, therefore, that this is no evidence of waiver, upon the part of Rees, of the condition of the policy. * * *

"Another ground relied upon as tending to prove a waiver upon the part of the defendant is the close investigation which the company made of the facts attending this loss, instituted upon its own behalf, and prosecuted anterior to the receipt of the proofs of loss. It does not strike me that an insurance company, knowing of a loss, is obliged to wait, and make no investigation, or is to limit itself to the information received in the proofs of loss. It can do that which the interests of mankind always induce,—look out for yourself, and protect your own interests. It is also said that the company threatened a suit. The circumstances surrounding this case seem to me to have made all parties anticipate that, ex necessitate, out of them would grow litigation. The plaintiff in a letter written by its attorneys, gentlemen of great learning and skill, excuses itself to the defendant by saying that it is necessary for Mr. Benson to establish by suit upon whom the responsibility of this loss should be fixed,—either upon the insurance company or the warehouseman,—intimating that the suit against the company was necessary in order to establish the liability of the warehouseman.

"It is said, again, that Rees' letter of 23d July, 1892, amounts to a waiver. This letter was written within the 60 days allowed to Benson, the insured, in which to make his proofs of loss. It was written in order to instruct him how he should make them so as to conform to the policy. That the letter was not an unreasonable one is shown by the fact that Benson himself recognized the propriety of the amendment suggested by it, and, so far as it was possible for him to do so, he conformed to its instructions, etc. It is said that the concluding part of the letter, 'Furthermore, you will please state what is the exact relationship of J. E. Watson to you, and in what way he may have been connected or associated with you in business at the time of the fire,' shows an evasion upon the part of Rees, and tends to show waiver. It strikes me, when we consider the circumstances under which Rees got the information from Benson in regard to Watson, that the question put to him was a very appropriate one. Rees had heard from Benson that he was related to Watson, and wanted him to state precisely what that relationship was. He also wanted him to state, that which the policy required should be stated, whether he was in any way connected in business with Watson. I think that it is going very far to say that this was a waiver of any informality because of information he had theretofore gathered, especially as the information asked for could very easily have been given, and the request was made within the time the policy allowed.

"The strongest point made indicating that there was a waiver upon the part of the company is that with regard to the testimony of Col. Anderson. As I understand the position assumed, it is this: The case developed the fact that the company, anterior to any proof of loss, was informed by a citizen of the highest respectability that it was absolutely impossible for the 100 bales of cotton to have been in the warehouse at the time of the fire, because he had counted the bales during the progress of the fire, and that there were not more than 34 or 35 in the warehouse then. The argument is that, the insurance company having been furnished with this information from such a source, the conclusion is irresistible that it would determine to defend the suit, and that it had done so. I have weighed that as closely as I can, and it does not seem to me to amount to a waiver. It does not follow, as an inevitable consequence, that the company would have resisted the claim. * * *

"I do not see, anywhere in the testimony, anything which amounts to a distinct denial upon the part of the company of its responsibility for the loss, that was communicated to the assured. If there was such testimony, I would not hesitate to say that the production of proofs of loss would be unnecessary, because it would be an idle form. * * * I will not instruct the jury to find for the defendant, but, following the latest decision of the supreme court of the United States, I will adopt the practice of the state courts of South Carolina, in this regard, and nonsuit the plaintiff. Central Transp. Co. v. Pullman's Palace Car Co., 139 U. S. 24, 11 Sup. Ct. 478."

That it is the duty of the trial judge in the courts of the United States, in cases like this, where he would be compelled to set aside a verdict for the plaintiff if one should be returned by the jury, to direct a verdict for the defendant, is now well established. We have lately had occasion to discuss this matter and to fully examine the authorities bearing upon it. Franklin Brass Co. v. Phœnix Assur. Co., 25 U. S. App. 119, 65 Fed. 773, 13 C. C. A. 124. Upon any view that could have been properly taken of the facts that the evidence offered the jury tended to establish, we think that it follows that the plaintiff below was not entitled to a verdict. The action of the judge presiding at the trial is approved by this court. In the case of Central Transp.. Co. v. Pullman's Palace Car Co., supra, the supreme court said:

"The difference between a motion to order a nonsuit of the plaintiff and a motion to direct a verdict for the defendant is, as observed by Mr. Justice Field, delivering a recent opinion of this court, 'rather a matter of form than substance, except that, in the case of a nonsuit, a new action may be brought, whereas, in the case of a verdict, the action is ended, unless a new trial be granted, either upon motion or upon appeal.' Oscanyan v. Arms Co., 103 U. S. 261, 264."

Even if the contention of the plaintiff in error be correct, which we do not find, that, under the "practice and mode of proceeding" in the courts of South Carolina, a nonsuit was not authorized in this case, nevertheless, it is submitted that it was not the intention of the legislation now known as section 914 of the Revised Statutes, which requires the courts of the United States to conform "as near as may be" to the practice existing in the courts of the state within which the trial is held, to change the now universal rule of procedure in the federal courts, to which we have alluded, and which has been commended by the supreme court, since the passage of the enactment mentioned. The duty of the trial judge, under circumstances like those found in this case, is thus described by Mr. Justice Miller, in delivering the opinion of the supreme court in the case of Pleasants v. Fant, 22 Wall. 116, 122:

"In the discharge of this duty, it is the province of the court, either before or after the verdict, to decide whether the plaintiff has given evidence sufficient to support or justify a verdict in his favor,—not whether, on all the evidence, the preponderating weight is in his favor. That is the business of the jury. But, conceding to all the evidence offered the greatest probative force which, according to the law of evidence, it is plainly entitled to, is it sufficient to justify a verdict? If it does not, then it is the duty of the court, after a verdict, to set aside, and grant a new trial. Must the court go through the idle ceremony in such a case of submitting to the jury the testimony on which plaintiff relies, when it is clear to the judicial mind that, if the jury should find a verdict in favor of plaintiff, that verdict would be set aside and a new trial had? Such a proposition is absurd, and, accordingly, we hold the true principle to be that, if the court is satisfied that, conceding all the inferences which the jury could justifiably draw from the testimony, the evidence is insufficient to warrant a verdict for the plaintiff, the court should say so to the jury. In such case the party can submit to a nonsuit, and try his case again, if he can strengthen it, except where the local law forbids a nonsuit at that stage of the trial, or, if he has done his best, he must abide by the judgment of the court, subject to a right of review, whether he has made such a case as ought to be submitted to the jury,—such a case as a jury might justifiably find for him a verdict."

In this case the order for a nonsuit was in the interest of the plaintiff, and not to its prejudice, and surely it has in that particular no grounds for complaint. We find no error in the judgment complained of, and it is therefore affirmed.