HODGES et al. v. KIMBALL et al.

(Circuit Court of Appeals, Fourth Circuit. November 8, 1900.)

No. 364.

**1. TRIAL—DIRECTION OF VERDICT.**

Under the rule of the federal courts it is the province of the trial judge, before submitting a case to the jury, to himself determine whether the evidence produced by the party on whom rests the burden of proof, conceding it the greatest probative force to which it is fairly entitled under

the law of evidence, is sufficient to justify a verdict in his favor, or to sustain such verdict if returned, and, if not, it is the duty of the judge to direct a verdict for the other party.

**2. MASTER AND SERVANT — ACTION FOR KILLING OF SERVANT — ISSUES AND PROOF.**

In an action against a railroad company to recover for the death of a brakeman who was killed in coupling cars, on the alleged ground that the cars were defective and out of repair, the burden does not rest upon the defendant to prove proper inspection; nor does the failure to make such proof tend to establish the plaintiff's case, which must rest on proof of negligence on the part of the defendant, which was the proximate cause of the injury.

**3. SAME—RAILROADS—INSPECTION OF CARS.**

Where a railroad company has established proper rules for the inspection of cars by its employés, it cannot be assumed, in the absence of proof, that such rules were not observed, for the purpose of charging the company with negligence and liability on account of an injury to an employé resulting from a defective car.

**4. SAME—ASSUMED RISKS—RAILROAD BRAKEMEN.**

A brakeman in the service of a railroad company, a part of whose duty it is to couple cars, assumes the risk of injury from coupling cars of different construction as one of the hazards of the employment, where he knows, or must be presumed to know, that cars of such different constructions are in use on the road.

**5. SAME—KILLING OF BRAKEMAN—CONTRIBUTORY NEGLIGENCE.**

A brakeman was directed by the conductor to loosen the brakes on standing cars, which were to be attached to the train, and was told that another brakeman would make the coupling. A rule of the company required brakemen to use a stick in making couplings, and to avoid going between the cars, and each brakeman was furnished with a stick for such use. Notwithstanding such orders and rule, the brakeman undertook to make the coupling, and with his hands, and for that purpose went between the cars, and was killed. *Held*, that upon such facts there could be no recovery against the railroad company for his death.

In Error to the Circuit Court of the United States for the Western District of Virginia.

For opinions, see 87 Fed. 545, and 91 Fed. 845.

Robert Burrow (Isaac Harr and Burrow Bros., on the brief), for plaintiffs in error.

R. M. Page (Jos. I. Doran, Fulkerson, Page & Hurt, on the brief), for defendants in error.

Before GOFF and SIMONTON, Circuit Judges, and PURNELL, District Judge.

PURNELL, District Judge. Plaintiffs' intestate lost his life on March 30, 1895, in the nighttime. The accident occurred on the Maritime spur track of the Thacker coal mines, near Thacker station, at a point where coal is loaded into the cars of the Norfolk & Western Railroad by dumping the coal from tipples. This method of loading coal is necessarily a dirty, grimy operation, and the air at such points in the coal region is filled with coal dust, which settles over all objects. A locomotive with one coal car attached was being backed up the spur track to be coupled to eighteen cars loaded with coal, standing on the track, coupled together. The conductor directed Lusk, the decedent, a brakeman who had been in the service of the defendants for some months, to let off the

brakes on the rear end of the cut of cars standing on the track, informing him that Brakeman Hazelett would make the coupling between the car attached to the engine and the standing cars. Notwithstanding this direction, Lusk gave the signal to slack back, and undertook to couple the cars, he being on the fireman's side of the train. In his attempt to make the coupling it is probable that his head was caught between a nut on the end of a truss rod on the end of one car and the bumper on the other car, and he received injuries—the right temple being crushed in—from which he died in a short time. There was a curve at the point where the coupling was attempted to be made, Lusk going between the cars from the outside of the curve. A bumper was missing from the end of one of the cars between which he entered. The bumper was missing from the side of the car on the inside of the curve, the side opposite that upon which he entered. The car in question had been inspected at Valleycrossing, a station of defendant's in Ohio, on the 26th day of February, 1895, and was found to need some draft-timber bolts, and held for those repairs, which were duly made. It was at the same time carded because of a cracked wrought draw-bar, one split side sill at end, and one cracked end sill. The defects for which it was carded were not such as to cause it to be put out of service; but, Valleycrossing being a point for the interchange of cars with other roads, the carding of the defects was to protect the receiving company in the event that the parts that were cracked gave out; in other words, to show the actual physical condition of the cars when delivered. The drawbar bolts were repaired, and the N. & W. car No. 5,347 left Valleycrossing March 11, 1895. The car passed through Kenova, a divisional point of defendant's road, on March 12, 1895. The whereabouts of the car was not shown from that date until the date of the accident. The defendants provided for a regular system of inspections at divisional points, and inspections by conductors and brakemen when trains stopped for water or for other trains. It does not appear when or from what cause the bumper became missing. It was in evidence that the bumpers of the two cars that were being coupled were not similarly spaced on the cars, and thus did not meet each other evenly; and a witness testified that he was present when a test was being made by bringing the same two cars together at the point of the accident 10 days thereafter, and that the bumpers passed each other. A rule of the defendant's required the use of coupling sticks by brakemen. Such stick was issued to decedent. There was also testimony that the proper position in making the coupling was for the brakemen to stoop so as to bring his head below the end sills of the cars. The N. & W. car No. 5,347 was a coal gondola. The weather at the time was snowy and rainy. The bumper, or deadwood, was of cast iron.

Four charges of negligence are made, as follows: In providing a car with an impaired, rotten, and defective deadwood or bumper; in failing to provide sufficient deadwood or bumpers on one side of one of the cars; in that the end sills of the car to which said bumpers had been attached were old, rotten, split, and otherwise

defective, by reason whereof the bumpers and handholds which had been thereto attached had fallen off and become so loose as to be unfit for the purposes for which they were made; and in that the dead blocks or bumpers on said cars were so inappropriately placed as they would not meet and strike each other in such a way as to prevent the cars from going together. After all the testimony had been heard, upon motion of defendant's counsel the trial judge held plaintiff was not entitled to recover, and instructed the jury to find for defendant. Plaintiff excepted to the ruling of the court. A verdict was returned in accordance with the instruction of the court, and judgment rendered thereon. This is the only exception in the record, for which plaintiff assigns nine reasons for error. The first is that there was sufficient evidence to warrant a verdict for plaintiff; second, because the evidence did not warrant the trial judge in reaching the conclusion that defendant had exempted itself from liability by sufficient and proper inspections of the defective car which caused the injury to plaintiff's intestate; third, because the conclusion of the trial judge that there had been sufficient and proper inspections of the defective car ignored the theory of plaintiff that the inspections of the car were carelessly and negligently performed by defendant; fourth, because the action of the trial judge ignores the theory of the plaintiff that the defects in the car which caused the death of plaintiff's intestate are shown to have existed for such length of time prior to the accident as that defendant is chargeable with knowledge of the same; fifth, because the conclusion of the trial judge that the inspections of the defective car causing the accident were sufficient in number, time, and character was based solely on the evidence of one witness, and ignores other and more reliable testimony to the contrary; sixth, because the conclusion of the trial judge that an inspection on March 12th, before the killing on March 30th, was all that could be reasonably required of defendant, ignored a rule of defendant which required conductors to "see that the couplings and brakes of the cars of their trains are in good order before starting," and the duty of inspecting the defective car at Thacker before being coupled to the balance of the train was on the conductor, and, if inspection had been made, the defect would have been discovered in time to prevent the killing of plaintiff's intestate; seventh, because the question of sufficiency and frequency of inspections of the defective car should have been submitted to the jury; eighth, because there was material evidence which tended to establish the negligence alleged in each count of plaintiff's declaration and amended declaration, and it was, therefore, error to withdraw the consideration of the case from the jury; and, ninth, because it was error to hold that it was not negligence in a railroad company to have cars of its own with bumpers or dead blocks of unequal height, or so placed that they would pass, instead of meeting and striking each other.

The argument was almost exclusively of the facts, and it is a source of regret that plaintiff's counsel have not favored this court with a statement from their standpoint. A clear statement of facts by

both parties assists the court in arriving at a fair summary. When all agree on a fact, it may be taken as settled, and those disputed may be more satisfactorily determined. This is of greater importance to parties and counsel who, in a case like the one at bar, seek a review of the testimony and a new trial because of a decision of the trial judge that a proper case has not been made to entitle the plaintiff to a verdict. Appellate courts will not look into voluminous records, and sift from the chaff of testimony the kernels of evidence, to find possible theories upon which a jury might have returned a verdict. There is a constant effort in actions for damages, especially against corporations, to have questions of law, science, and art, questions which it requires years of training and experience to properly solve, submitted to juries, many members of which have not had the opportunity to even consider. When against railroads, questions of civil and mechanical engineering, tests of machinery, effect of steam and complicated appliances of which many jurors, called into the jury box probably for the first time, in many cases from a rural district where the hum of machinery and the music of the looms are never heard, are as uninformed as was the old lady who, upon hearing the pumping of the air brake for the first time, in the goodness of her heart, imagined and remarked that the poor engine was "so tired."

Trial by jury of questions of fact is the best method that has been conceived or suggested. It is the glory and boast of our system of jurisprudence. But the questions submitted to a jury should be questions of fact such as the jury can understand. The courts are constantly drawing the distinction and laying down the rule of demarkation. If every question raised is to be submitted to the jury, as frequently contended and occasionally decided, the trial judge becomes a useless appendage, and the idea of selecting these officers from a profession learned in law, experienced in solving controversies, who have devoted the best years of their life to study, and controlling their natural passions and prejudices while serving the interests of others, loses its force and effect. A layman could serve as well. The trial judges constitute the conservative element in the system, in whom the people, the source of all power, have, and must have, confidence. Vested with great powers, appeals and reviews by higher courts are checks and safeguards against error, mistake, and, what is very rare, an abuse of authority. "Trial by jury, in its primary and usual sense of the term, at common law and in the American constitutions, is not merely a trial by a jury of twelve men before an officer with authority to cause them to be summoned and empowered to administer oaths to them and to a constable in charge; but it is a trial by a jury of twelve men in the presence and under the superintendence of a judge, empowered to instruct them on the law, and to advise them on the facts, and (except on acquittal on a criminal charge) to set aside their verdict, if, in his opinion, it is against the law or the evidence. This proposition has been so generally admitted and so seldom contested that there has been little occasion for its

distinct assertion." Traction Co. v. Hof, 174 U. S. 1, 19 Sup. Ct. 580, 43 L. Ed. 873.

The exception presents the very important question when is it the duty of the trial judge to direct a verdict, and the more specific question, did the trial judge err, in the case at bar, in so directing a verdict? The rule is thus stated by Chief Justice Fuller in Treat Mfg. Co. v. Standard Steel & Iron Co., 157 U. S. 675, 15 Sup. Ct. 718, 39 L. Ed. 854:

"But it is well settled that where the trial judge is satisfied upon the evidence that the plaintiff is not entitled to recover, and that a verdict, if rendered for plaintiff, must be set aside, the court may instruct the jury to find for the defendant."

.In Pleasants v. Fant, 22 Wall. 116, 22 L. Ed. 780, which case was followed by the trial judge, Mr. Justice Miller says:

"No doubt there are decisions to be found which go a long way to hold that, if there is the slightest tendency in any part of the evidence to support plaintiff's case, it must be submitted to the jury; and in the present case, if the court had so submitted it with proper instructions, it would be difficult to say it would have been an error of which the defendant could have complained here. But, as was said by this court in the case of Improvement Co. v. Munson, 14 Wall. 448, 20 L. Ed. 867, recent decisions of high authority have established a more reasonable rule that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to . find a verdict for the party producing it, upon whom the onus of proof is imposed. * * * It is the province of the court, either before or after the verdict, to decide whether the plaintiff has given evidence sufficient to support or justify a verdict in his favor. Not whether on all the evidence the preponderating weight is in his favor. That is the business of the jury. But, conceding to all the evidence offered the greatest probative force, which, according to the law of evidence, it is fairly entitled to, is it sufficient to justify a verdict? If it does not, then it is the duty of the court after a verdict to set it aside, and grant a new trial. Must the court go through the idle ceremony in such a case of submitting to the jury the testimony on which plaintiff relies, when it is clear to the judicial mind that, if the jury should find a verdict in favor of the plaintiff, that verdict would be set aside, and a new trial had? Such a proposition is absurd, and accordingly we hold the true principle to be that, if the court is satisfied that, conceding all the inferences which the jury could justifiably draw from the testimony, the evidence is insufficient to warrant a verdict for the plaintiff, the court should say so to the jury."

This doctrine has been followed by numerous decisions of the federal courts: Montclair Tp. v. Dana, 107 U. S. 162, 2 Sup. Ct. 403, 27 L. Ed. 436; Railroad Co. v. Woodson, 134 U. S. 621, 10 Sup. Ct. 628, 33 L. Ed. 1032; People's Bank v. Ætna Ins. Co., 74 Fed. 507, 20 C. C. A. 630; Sloss Iron & Steel Co. v. South Carolina & G. R. Co., 85 Fed. 138, 29 C. C. A. 50. It is too well settled to require a further citation of authority. These and many other authorities effectively dispose of the general question raised by the exception.

As to the specific question. The first reason given for error includes in its decision all the others, which are but more detailed statements of a general proposition. The specific allegations, as set out in the record, do not allege as negligence the failure to provide for or make proper inspections of defendant's cars. The alle-

gations of negligence were all as to the absence of the deadwood or bumper and handholds or grab irons; hence the second to seventh reasons assigned for error have no force or application, unless the inspections were so carelessly and negligently made, or not made, as to bring home to defendant a knowledge of the defect, and that defect was the proximate cause of the injury. Inspections were provided for under sufficient rules. As far as the evidence shows, the rules were observed. To say they were not is conjecture. Verdicts cannot stand on conjecture.

The eighth assignment of error or reason for error is equally untenable under the rule. That there was material evidence which tended to show negligence, etc., is not sufficient under the rule as laid down. Was it sufficient to the judicial mind? Having looked upon the witnesses, observed their demeanor upon the stand, their manner of testifying, would the court have permitted a verdict to stand? Was it sufficient evidence—not testimony—to warrant a verdict? Not in the mind of counsel or bystanders, but in the mind of the court, superintending and presiding at the trial, to permit a verdict to stand? If not, then there was no error.

The ninth assignment or reason for error is fully answered by the rule laid down by the supreme court in Kohn v. McNulta, 147 U. S. 238, 239, 13 Sup. Ct. 298, 37 L. Ed. 150. The rule governing the duty of an employer to an employé is essentially different from that governing the duty of a railroad to passengers. The argument of plaintiff seems to proceed on the theory that the burden is on the defendant to prove frequent inspections, and rebut a presumption of negligence, but there is no better settled principle than that he who alleges negligence must prove it. It cannot be inferred from an unproved fact. The question is not, as stated, did the absence of the handholds and bumper cause the accident? But was the absence of the bumper and handholds such negligence on the part of defendant, the proximate cause of the injury, as to render defendant liable in damages? Every accident on a railroad resulting in injury to an employé does not necessarily entitle him or his personal representatives to damages. The accident must be the result of negligence on the part of the railroad company, and that negligence must be the proximate cause of the injury. This is familiar learning for which authority need not be cited. Plaintiff's intestate was an employé of defendant, not a passenger, or one disconnected with the company; and a different rule applies than would had he not been an employé. An employé assumes risks necessarily incident to his employment, and is not entitled to damages for injury as others who do not assume such risks. The N. & W. car No. 5,347 was inspected under the rules of the company at Valleycrossing, Ohio, March 11th, and again at Kenova on March 12th; and there is no evidence to show it was not inspected by the conductor and crew when the train stopped for water or passed other trains. So far as the evidence shows, the absence of the bumper was not observed until the accident, March 30th. The decedent knew, or should have known, the system and regulations of his employers as to inspections. The employé assumes the risks of the customs and methods

of the business of his employer, the hazards incident thereto. Proper inspections seem to have been provided for and had. When was the bumper broken off? The evidence does not disclose. Some of the witnesses express opinions, it is true; but these witnesses are not found to be experts in such matters, and their opinions may be entitled to weight or not. Bumpers may be broken off at a single coupling at any point. Their purpose is to receive the jars of the cars coming together, and it is common knowledge that in coupling freight cars these jars are sometimes violent from the nature of the business. Cast-iron bumpers and wrought-iron bolts cannot be made so as to resist all blows and all pressure. The car was inspected at the last divisional point. The evidence does not show where it was after that (18 days) to the time of the accident. It may have been on a side track, or at other points, out of use. We might infer many things as reasonable as the inference the jury was to infer, without evidence. Having provided for inspections of cars at divisional points, and by the conductors and brakemen at stopping points, the defendant had discharged its duty to its employés; and, unless it is shown that such rules and regulations were so carelessly and negligently complied with by those charged with the duty, the company is not liable. Railroad Co. v. Daniels, 152 U. S. 684, 14 Sup. Ct. 756, 38 L. Ed. 597; Railroad Co. v. Rhodes, 18 C. C. A. 9, 71 Fed. 145. In the first-cited case, at page 691, 152 U. S., page 758, 14 Sup. Ct., and page 601, 38 L. Ed., the relation of employer and employé is discussed by the chief justice, delivering the opinion of the court, and the rule as to what care is required of the employer defined. The rule is sustained in many decisions; among others Southern Pac. Co. v. Seley, 152 U. S. 145, 14 Sup. Ct. 530, 38 L. Ed. 391; Hough v. Railroad Co., 100 U. S. 215, 25 L. Ed. 612; Railroad Co. v. McDade, 135 U. S. 554, 10 Sup. Ct. 1044, 34 L. Ed. 235; Gardner v. Railroad Co., 150 U. S. 349, 14 Sup. Ct. 140, 37 L. Ed. 1107; Railroad Co. v. Daniels, 152 U. S. 684, 14 Sup. Ct. 756, 38 L. Ed. 597; Same v. O'Brien, 161 U. S. 451, 16 Sup. Ct. 618, 40 L. Ed. 766; Iron Co. v. Weiss, 40 C. C. A. 270, 100 Fed. 45. The absence of the handholds or grab irons does not appear in any sense to have been the proximate cause of the injury. The evidence is that these irons were missing from the opposite side of the car from which decedent entered. If they had been on the car on that side, they could not have aided him. The act of congress, which is not referred to in either brief or invoked by plaintiff, requires railroads doing interstate commerce to provide handholds or grab irons in the ends and sides of freight cars (27 Stat. 531), but a failure to provide such grab irons does not excuse a brakeman from a failure to use ordinary prudence in a particular case, where he observes the absence of such appliances; nor does this act change the rule as to the liability of the master where the failure to comply with the statute was not the cause of the injury. Railroad Co. v. Baker, 33 C. C. A. 468, 91 Fed. 225.

The other allegation of negligence—"having the bumpers so placed they would not meet and strike each other in such a way as to prevent the cars from going together"—is the risk of a brakeman

engaged in coupling cars. That the bumpers did not come together was testified to by a witness after a test, while others present at the test said nothing about it. This, if true, is a charge of faulty construction, a patent defect, and one of the risks assumed by a brakeman. In Tuttle v. Railroad Co., 122 U. S. 189, 7 Sup. Ct. 1166, 30 L. Ed. 1114, in delivering the opinion of the court, Mr. Justice Bradley, quoting Judge Cooley with approval, said:

"The rule is now well settled that in general, when a servant, in the execution of his master's business, receives an injury which befalls him from one of the risks incident to the business, he cannot hold the master responsible, but must bear the consequences himself." And adds, after further quotation: "This accurate summary of the law supersedes the necessity of quoting cases, which are referred to by the author and by every recent writer on the same subject. * * * Tuttle, the deceased, entered into the employment of defendant as brakeman in the yard in question, with a full knowledge (actual or presumed) of all these things,—the form of the side tracks, the construction of the cars, and the hazards incident to the service. Of one of these hazards he was unfortunately the victim. The only conclusion to be reached from these undoubted facts is that he assumed the risks of the business, and his representative has no recourse for damages against the company."

To the same effect is the language of Mr. Justice Brewer in delivering the opinion of the court in Kohn v. McNulta, 147 U. S. 238, 13 Sup. Ct. 298, 37 L. Ed. 150. The syllabus of the case is:

"A servant of a railroad company, employed in coupling freight cars together, who is well acquainted with the structure of the freight cars of his employer, and also those of other companies sending freight cars over his employer's road differing from his employer's cars in structure and in the risk run in coupling them, assumes, upon entering upon the service, all ordinary risks run from coupling all such cars."

Of what, then, did the negligence alleged, of which there was sufficient evidence, consist, to entitle the plaintiff to a verdict? The inspections were amply provided for, and there is no evidence of a failure to make such inspections, or that they were so negligently made as to make the employer liable in damages. The absence of the handholds was not the proximate cause of the injury. The fact that the bumpers did not meet and strike each other when a test was made is not sufficient, and the absence of the bumper was not such negligence and the proximate cause of the injury as to render defendant liable in damages. There was some testimony tending to show lack of care, disregard of rules and orders on the part of plaintiff's intestate, which contributed to the accident and injury, but a finding of contributory negligence is only essential to an antecedent finding of negligence on the part of defendant. In the view the court takes of the case, this is unnecessary. It is not proved—and the burden of proof is on the plaintiff—that either or all the defects complained of were the proximate cause of the injury, and defendant had such knowledge of such defects as would make it liable in damages. Plaintiff's intestate, like many others, was an unfortunate victim of risks he assumed in accepting extra-hazardous employment. Similar accidents frequently occur, and of men in such positions it may more truly than of any others be said in the midst of life they are in death. When the employer has discharged every duty, complied with the prescribed rules, dam-

104 F.—48

ages will not assuage the grief of those to whom the victim was dear; and to give them is unjust, a species of oppression and judicial confiscation. Time alone can heal the wounds. There was no reversible error in the action of the trial judge, disclosed by the record. The judgment is therefore affirmed.

GOFF, Circuit Judge, concurs in the judgment of affirmance.

SIMONTON, Circuit Judge (concurring). I fully concur in the conclusion reached by the court. The evidence establishing beyond question that Samuel L. Lusk, the intestate of the plaintiffs, when he undertook to couple the cars, had been informed that another hand had been instructed to perform this duty; that he also was aware that under the rules of the company all couplings must be made with a stick, and that going between the cars must be avoided,—notwithstanding this, he took upon himself, without orders, to do the coupling, and in doing so, instead of using a stick, he attempted to do it with the hand. His own acts were the proximate cause of his injury. He put himself in a position in which he had no business to be, and attempted to discharge the duty of another. In doing this he violated the rule of the company adopted for the prevention of the very thing which happened. He voluntarily put himself, without cause, in a position of peril, and enhanced his danger by nonobservance of the rule. The court below could not have done otherwise than it did in instructing the jury. Affirmed.