## SOUTHERN PACIFIC COMPANY *v.* SELEY.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF UTAH.

No. 119.  Argued November 27, 1893. — Decided March 5, 1894.

After serving as a brakeman in the employ of a railroad company, S. became a conductor on the same railroad, and as such had been engaged at a depot yard at one of its stations at least once a week, and usually oftener, for seven years.  While making up his train at that yard, preparatory to running out with it, after the chief brakeman had failed in an attempt to make a coupling he tried to make it.  There was an unblocked frog at the switch where the car was.  He put his foot into this frog, and was told by the brakeman that he would be caught if he left it there.  He took it out, but put it in again, and, being unable to extricate it when the cars came together, he was thrown down and killed.  In an action brought by his administratrix against the railroad company to recover damages, *held,* that S. must be assumed to have entered and continued in the employ of the railroad company with full knowledge of any danger which might arise from the use of unblocked frogs; that he was guilty of contributory negligence; and that the company was entitled to a peremptory instruction in its favor.

THIS was an action in the District Court for the First Judicial District of the Territory of Utah against the Southern Pacific Company, a railroad corporation, brought by Isabella Seley, administratrix of William B. Seley, deceased, to recover damages for the death of her husband caused by the alleged negligence of the defendant company.  The Southern Pacific Company was incorporated under the laws of the State of Kentucky, and is engaged in operating the Central Pacific Railroad, running between the city of Ogden in Utah and a point in California.

Seley was, for seven years prior to his death, a conductor upon freight trains on the lines of the Southern Pacific Company and of its predecessor, the Central Pacific Railroad Company, and before that time had been a brakeman in the same employ.  In the course of his business he was engaged in the depot yard at Humboldt Wells at least once a week and usually oftener.

The accident in which Seley met his death took place on July 7, 1887, at this depot yard, while he was making up his train, preparatory to running out with it.

The chief brakeman, named Hardy, had met with some difficulty in coupling a car, and had twice failed to make the coupling. The other brakeman had also failed in an attempt to couple the car. Seley undertook to effect the coupling. His first effort was a failure, the link slipping. At this time, Hardy testifies that he warned Seley to take his foot out of the frog — that he would be caught.

Seley made a second attempt, and, while endeavoring to make the coupling, again put his foot into the frog, from which he was unable to extricate it when the cars came together. He was thrown down by the break-beam, the wheel passed over him, and he was instantly killed.

At the close of the plaintiff's evidence, the defendant moved for a nonsuit. This was refused and an exception was allowed. At the close of the entire evidence, the defendant asked the court to instruct the jury to find a verdict for the defendant. This was refused, as were likewise certain instructions prayed for. A verdict for $7500 was rendered in favor of the plaintiff, on which judgment was entered, a motion for a new trial having been overruled. This judgment was affirmed by the Supreme Court of the Territory, to whose judgment a writ of error was brought to this court.

*Mr. Maxwell Evarts*, for plaintiff in error, cited: *Washington & Georgetown Railroad* v. *McDade*, 135 U. S. 554; *Tuttle* v. *Detroit & Milwaukee Railway*, 122 U. S. 189; *Kohn* v. *McNulta*, 147 U. S. 238; *Bunt* v. *Sierra Butte Gold Mining Co.*, 138 U. S. 483; *O'Rorke* v. *Union Pacific Railway*, 22 Fed. Rep. 189; *The Maharajah*, 49 Fed. Rep. 111; *Naylor* v. *New York Central Railroad*, 33 Fed. Rep. 801; *The Luckenbach*, 53 Fed. Rep. 662; *Appel* v. *Buffalo, New York &c. Railroad*, 111 N. Y. 550; *Chicago, Rock Island & Pacific Railway* v. *Lonergan*, 118 Illinois, 41; *Williams* v. *Central Railroad*, 43 Iowa, 396; *Rush* v. *Missouri Pacific Railway*, 36 Kansas, 129; *Wilson* v. *Winona &c. Railroad*, 37 Min-

nesota, 326; *Lake Shore &c. Railway* v. *McCormick,* 74 Indiana, 440; *Haas* v. *Buffalo, N. Y. & P. Railroad,* 40 Hun, 145; *Woodley* v. *Metropolitan District Railway,* 2 Ex. D. 384; *Walsh* v. *Whiteley,* 21 Q. B. D. 371; *Thomas* v. *Quartermaine,* 18 Q. B. D. 685; *Cunningham* v. *Chicago, Milwaukee &c. Railroad,* 17 Fed. Rep. 882; *Railroad Co.* v. *Jones,* 95 U. S. 439; *Randall* v. *Balt. & Ohio Railroad,* 109 U. S. 478; *The Serapis,* 51 Fed. Rep. 91; *Townsend* v. *Langles,* 41 Fed. Rep. 919; *Schroeder* v. *Michigan Car Co.,* 56 Michigan, 132; *Sweeney* v. *Berlin & Jones Envelope Co.,* 101 N. Y. 520.

*Mr. A. A. Hoeling, Jr.,* and *Mr. J. M. Wilson,* (with whom was *Mr. Samuel Shellabarger* on the brief,) for defendant in error.

I. It was negligence on the part of the plaintiff in error to provide, in the construction, such a frog. The deceased did not take the risk of injury because thereof, and was not chargeable with notice of danger, nor with negligence, in making the coupling at the place, and under the circumstances, as shown in this record.

There is no evidence that plaintiff in error ever used blocked frogs on its road, but there is evidence that it used at that time a cast-iron frog, in which the space between the rails at the apex of the frog is filled with cast iron. In this frog a man's foot could not get caught. It is also in evidence that the Union Pacific and some other railroads used blocked frogs, and that they have been used for at least ten or twelve years in this country; that blocking the frog would make such an accident as the present almost impossible, and that it is more generally the custom to block frogs in yards (such as this, where the accident occurred) than on the main line.

It is important here to note the difference between a blocked frog and a frog that is blocked. A blocked frog is one made of iron, and so constructed that the space is filled with iron; while a frog blocked is one in which there is no iron in the space, but that space is filled with wood — the object being the

same in both cases, to prevent injuries by catching the foot between the rails; and on this road the blocked frog, that is, one in which the space is filled with iron, was used, and also the open frog which was not blocked, by inserting the wood, to prevent injury, as above.

This is mentioned here as throwing light not only upon the question under immediate consideration, but also upon the question of notice hereafter to be considered.

The court below, in passing upon this same question of the risks assumed by the deceased in entering the employ of the defendant, cites, with approval, the case of *Patterson* v. *Pittsburgh & Connellsville Railroad*, 76 Penn. St. 389, 393.

In that case, the court, per Gordon, J., says: "If the instrumentality by which he is required to perform his service is so obviously and immediately dangerous that a man of common prudence would refuse to use it, the master cannot be held liable for the resulting damage. In such case, the law adjudges the servant guilty of concurrent negligence, and will refuse him that aid to which he otherwise would be entitled. But where the servant, in obedience to the requirement of the master, incurs the risk of machinery which, though dangerous, is not so much so as to threaten immediate injury, or where it is reasonably probable it may be safely used by extraordinary caution or skill, the rule is different. In such case, the master is liable for a resulting accident." See also *Conroy* v. *Vulcan Iron Works*, 62 Missouri, 35; *Pennsylvania Co.* v. *Roy*, 102 U. S. 451; *Lawless* v. *Connecticut River Railroad*, 136 Mass. 1.

II. The employer is bound to provide suitable physical means and agencies for the conduct of his business. The employé does not take the hazard of any negligence of the employer in that regard. The employé only takes the risks of the dangers which ordinarily attend, or are incident to, the business in which he engages, and which cannot be avoided by extreme diligence and the highest skill, and what are the ordinary risks depends upon the special circumstances of the particular case. *Hough* v. *Railway Co.*, 100 U. S. 213; *Wabash Railway* v. *McDaniels*, 107 U. S. 454; *Snow* v. *Housatonic Railroad*, 8 Allen, 441; *S. C.* 85 Am. Dec. 720; *Cayzer* v.

*Taylor,* 10 Gray, 274; *S. C.* 69 Am. Dec. 317; *Seaver* v. *Boston & Maine Railroad,* 14 Gray, 466; *Bartonshill Coal Co.* v. *Reid,* 3 Macq. App. Cas. 266.

III. Where, in an action against a common carrier to recover damages for injuries, there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and is to be settled by a jury; and this whether the uncertainty arises from a conflict in the testimony, or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them. *Richmond & Danville Railroad* v. *Powers,* 149 U. S. 43; *Washington & Georgetown Railroad* v. *McDade,* 135 U. S. 554; *Hough* v. *Railway Co.,* 100 U. S. 213; *Delaware, Lackawanna &c. Railroad* v. *Converse,* 139 U. S. 469; *Railroad Co.* v. *Stout,* 17 Wall. 657; 2 Thompson on Negligence, 1178; *Gates* v. *Pennsylvania Railroad,* 154 Penn. St. 566.

The court is not permitted to take from the jury these questions of negligence, and to decide them, unless the evidence shows that the negligence of the defendant in error was gross and wilful. If it was less than that, then the questions of negligence were for the jury, and are all settled in favor of defendant in error by the verdict.

It is, we submit, impossible fairly to contend, in the present case, that any of the alleged contributory negligence of the defendant in error was of this kind.

Therefore, the verdict has settled, in favor of the defendant in error, both the question of the negligence of plaintiff in error, and the absence of contributory negligence on the part of the defendant in error.

In this case it cannot be conclusively presumed that the defendant knew the dangerous character of these frogs. The most that can be said of it is that the inference may be drawn that he did know it from the length of his service on the road as an employé; and yet, from the nature of that service, reasonable men might also infer that in discharging his duties he would not observe matters that appertained wholly to the construction of the road; that his attention was directed to

the movement of his train. Reasonable men might conclude that he had not such knowledge of the conditions at this place as to charge him with neglect, and especially under the circumstances, where there was difficulty in making this particular coupling, three efforts having been made by brakemen and one by himself before this injury occurred, that it was not negligence for him in his effort to make this coupling under such circumstances to fail to observe this particular frog, which happened to be at the very place where this duty necessarily was performed. It was, therefore, preëminently a case to be submitted to the jury, and the finding of the jury on that subject under the authorities above alluded to will not be reviewed by the court.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

The theory upon which the plaintiff proceeded in the court below was that Seley lost his life by reason of the negligence of the defendant, a railroad company, in using in its switches what is called an "unblocked frog."

A frog, in railroad parlance, is a section of a rail, or of several rails combined, at a point where two railways cross, or at the point of a switch from a line to a siding or to another line, and its function is to enable a car or train to be turned from one track to another. In a blocked frog the point of space between the rails, at the point where the car is switched from one track to another, is filled with wood or other material, so that the foot will not be held. There is a form of cast-iron frog, in which the space between the rails at the apex of the frog is filled with cast iron. But the evidence clearly was that the defendant company used the unblocked frog, although at some places the cast-iron frog was used. The weight of the evidence, as we read it in the bill of exceptions, plainly was that on the other great railroad systems of the West the unblocked frog was generally used. There was evidence tending to show that the unblocked frog is the better form — that the blocked frog is liable to be broken, get out of place, and throw the train from the track.

In this disputable state of the facts the defendants asked the court to charge the jury as follows:

"The jury are instructed that if they find from the evidence that the railroad companies used both the blocked and the unblocked frog, and that it is questionable which is the safest or most suitable for the business of the roads, then the use of the unblocked frog is not negligence, and the jury are instructed not to impute the same as negligence to the defendant, and they should find for the defendant."

This prayer should have been given by the court.

In the case of *Schroeder* v. *Michigan Car Co.*, 56 Mich. 132, 133, the Supreme Court of Michigan, per Cooley, J., said:

"From this statement of facts it will appear that if the defendant has been guilty of any negligence contributing to the injury, it is to be found in the fact that a machine is made use of which is not so constructed as to guard as well as it might against similar accidents. Had the machine been constructed with a shield over the cog wheels, this particular accident would probably not have occurred; and any one whose attention was drawn to the danger of such accidents would probably have perceived the desirability of such a shield. But the machine is shown by the evidence to be manufactured and sold by a prominent and reputable house, and much used throughout the country, and the defendant cannot be said to be exceptionally wanting in prudence in purchasing and making use of it. Such danger as would result from making use of it was perfectly apparent, and would seem to be easily avoided."

*Walsh* v. *Whiteley*, 21 Q. B. D. 371, 378, 379, was a case where the plaintiff was employed in defendant's mill, and it was his duty to put a band upon a vertical wheel while in motion. The disk of the wheel was not solid throughout, but had a number of holes in it. While putting the band on the wheel the plaintiff's thumb slipped into one of the holes, and was cut off. It appeared on the trial that these wheels were made sometimes with and sometimes without holes. The plaintiff's witnesses stated generally that the wheels with holes were dangerous. The plaintiff never made any complaint to his

employers. He recovered a verdict, but the judgment was, on appeal, reversed, Lindley and Lopez, JJ., saying: "Is there any evidence of the machine being defective, even in the abstract? It was perfect in all respects. It was not impaired by use. The only suggestion is that the wheel, which might have been solid, had holes in it; and that, if the wheel had been solid, the plaintiff could not have put his thumb where he did, and the accident would not have happened. . . . But the plaintiff had used the same kind of machine for thirteen years, and had sustained no injury. . . . In these circumstances we can see no evidence of any defect in the condition of the machine, even apart from the negligence of the employer. It may be that a solid wheel would have been safer, but it would be placing an intolerable burden on employers to hold that they are to adopt every fresh improvement in machinery. . . . It seems to us that in this case there is not a particle of evidence of any defect arising from the negligence of the employer. It was a machine generally used, used by the plaintiff for thirteen years without any complaint or mischief arising."

*Sweeny* v. *Berlin & Jones Manufacturing Co.*, 101 N. Y. 520, 524, was a case where the plaintiff was injured by some sort of a press worked by steam. It was old-fashioned and with no modern improvements. The court said: "He knew as much about it and the risk attending its use as the master. The defendant could not be required to provide himself with other machinery or with new appliances, nor to elect between the expense of doing so and the imposition of damages for injuries resulting to servants from the mere use of an older or different pattern. In the absence of defective construction, or of negligence or want of care in the reparation of machinery furnished by him, the master incurs no liability from its use. The general rule is that the servant accepts the service subject to the risks incidental to it, and where the machinery and implements of the employer's business are at that time of a certain kind or condition and the servant knows it, he can make no claim upon the master to furnish other or different safeguards." *Hodgkins* v. *Eastern Railroad*, 119 Mass. 419, is to the same effect.

Our own cases speak the same language. *Randall* v. *Baltimore & Ohio Railroad*, 109 U. S. 478, 482, was a case where the plaintiff was injured in the course of his employment as a brakeman. It appeared on the trial that he was hurt, while unlocking a ground switch, by a train other than his own. It was alleged that the defendant company was negligent in that it did not have an upright switch instead of a ground switch, as the former was safer. This court, affirming the judgment of the court below, said : "There was no sufficient evidence of any negligence on the part of the railroad company in the construction and arrangement of the switch to warrant a verdict for the plaintiff on that ground. The testimony of the plaintiff and his witness was too slight. A railroad yard, where trains are made up, necessarily has a great number of tracks and switches close to one another, and any one who enters the service of a railroad company, in any work connected with the making up or moving of trains, assumes the risk of that condition of things. . . . The switch was of a form in common use, and was, to say the least, quite as fit for its place and purpose as an upright switch would have been."

In *Washington & Georgetown Railroad* v. *McDade*, 135 U. S. 554, 570, this court used the following language : " Neither individuals nor corporations are bound, as employers, to insure the absolute safety of the machinery or mechanical appliances which they provide for the use of their employés. Nor are they bound to supply the best and safest or newest of these appliances for the purpose of securing the safety of those who are thus employed."

In the case of *Tuttle* v. *Detroit & Milwaukee Railway*, 122 U. S. 189, 194, it was claimed that a brakeman, who was injured in coupling cars, had a right to go to the jury on the question whether the defendant company was not negligent in having too sharp a curve in its road where it entered a yard ; but this court, by Mr. Justice Bradley, said : " Although it appears that the curve was a very sharp one at the place where the accident happened, yet we do not think that public policy requires the courts to lay down any rule of law to re-

strict a railroad company as to the curves it shall use in its freight depots and yards, where the safety of passengers and the public is not involved; much less that it should be left to the varying and uncertain opinions of juries to determine such an engineering question. . . . It is for those who enter into such employment to exercise all that care and caution which the perils of the business in each case demand. The perils in the present case, arising from the sharpness of the curve, were seen and known. They were not like the defects of unsafe machinery which the employer has neglected to repair, and which his employés have reason to suppose is in proper working condition. Everything was open and visible, and the deceased had only to use his senses and his faculties to avoid the dangers to which he was exposed. One of these dangers was that of the draw bars slipping and passing each other when the cars were brought together. It was his duty to look out for this and avoid it. The danger existed only on the inside of the curve. This must have been known to him. It will be presumed that, as an experienced brakeman, he did know it, for it is one of those things which happen, in the course of his employment, under such conditions as existed here."

It was not pretended in the present case that the frog in which Seley had put his foot was defective or out of repair. The contention solely is that there is another form of frog, not much used, and which, if used by the defendant, might have prevented the accident.

In view of these cases and many others of similar import, which it is unnecessary to cite, we think it is plain that the defendant was entitled not merely to the instruction prayed for, if the case went to the jury, but that, upon the whole evidence, the prayer for a peremptory instruction in the defendant's favor ought to have been granted.

The evidence showed that Seley had been in the employ of the defendant for several years as brakeman and as conductor of freight trains; that his duty brought him frequently into the yard in question to make up his trains; that he necessarily knew of the form of frog there in use; and it is not shown

that he ever complained to his employers of the character of frogs used by them.   He must, therefore, be assumed to have entered and continued in the employ of the defendant with full knowledge of the dangers asserted to arise out of the use of unblocked frogs.

*Appel* v. *Buffalo, N. Y. &c. Railroad,* 111 N. Y. 550, was a case where the plaintiff's intestate was a brakeman employed in coupling cars in the yards of the defendant at Buffalo, N. Y., and while so engaged his foot was caught in an unblocked frog, and he was run over and killed ; and the Court of Appeals held that, " in accepting and continuing in the employment, the deceased assumed the hazard of all known and obvious dangers, and that he was chargeable with notice of the difficulty in removing the foot when caught in the frog, and of the danger to be apprehended therefrom, and therefore that a cause of action was not made out, and a refusal to nonsuit was error."

In the case of *Washington & Georgetown Railroad* v. *McDade,* 135 U. S. 554, 570, this court said, through Mr. Justice Lamar : " If the employé knew of the defect in the machinery from which the injury happened, and yet remained in the service and continued to use the machinery without giving any notice thereof to the employer, he must be deemed to have assumed the risk of all danger reasonably to be apprehended from such use, and is entitled to no recovery."

In *Tuttle* v. *Detroit & Milwaukee Railway,* 122 U. S. 189, this court approved the action of the court below in holding that the plaintiff was precluded from a recovery by negligence of his own, and added that the judge was right in directing a verdict for the defendant on the broader ground that a person who enters into the service of another in a particular employment assumes the risk incident to such employment.

In *Kuhn* v. *McNulta,* 147 U. S. 238, 241, the case was that of a brakeman who was injured while coupling cars, and who alleged negligence in the defendant company in permitting cars of another road to be brought on defendant's road, which cars had bumpers of unusual length ; and it was said by this court : " It is not pretended that these cars were out of

repair, or in a defective condition, but simply that they were constructed differently from the Wabash cars in that they had double deadwoods or bumpers of unusual length to protect the draw bars. But all this was obvious even to a passing glance, and the risk which there was in coupling such cars was apparent. It required no special skill or knowledge to detect it. The intervenor was no boy, placed by the employer in a position of undisclosed danger, but a mature man, doing the ordinary work which he had engaged to do, and whose risks in this respect were obvious to any one. Under those circumstances he assumed the risk of such an accident as this, and no negligence can be imputed to the employer."

That Seley was guilty of contributory negligence, and therefore not entitled to recover, we think is also obvious.

Knowing, as he did, the character of the frog, and the liability of being caught in it, and after having been specially warned by the assistant brakeman, he yet persisted in exposing himself to an obvious danger. His object to couple the cars might have been successfully accomplished without placing his foot in the frog.

Recklessness could hardly go further. The evidence would warrant no other conclusion than that he took the risk of the work in which he was employed, and that his negligence in the course of that work was the direct cause of his death. The court should have directed a verdict for the defendant. *Randall* v. *Balt. & Ohio Railroad*, 109 U. S. 478; *Schofield* v. *Chicago, Milwaukee &c. Railway*, 114 U. S. 615; *Gunther* v. *Liverpool & Globe Ins. Co.*, 134 U. S. 110; *Bunt* v. *Sierra Butte Gold Mining Co.*, 138 U. S. 483.

*The judgment of the court below is reversed, and the cause is remanded with directions to award a new trial.*