# CASES

## ARGUED AND DETERMINED

IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

---

ST. LOUIS MERCHANTS' BRIDGE TERMINAL RY. CO. v. SCHUERMAN.*

(Circuit Court of Appeals, Eighth Circuit. October 17, 1916.)

No. 4664.

1. COMMERCE 8(6)—MASTER AND SERVANT 250¼, New, vol. 15 Key-No. Series—INJURIES TO SERVANT—ACTIONS—WHAT LAW GOVERNS.

Where the defendant railroad company was engaged in interstate commerce, a servant injured while engaged in interstate commerce may sue under the federal Employers' Liability Act April 22, 1908, c. 149, 35 Stat. 65 (Comp. St. 1913, §§ 8657–8665), and that act and the federal Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531 (Comp. St. 1913, §§ 8605–8612), will govern the company's liability.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. 8(6).]

2. MASTER AND SERVANT 111(1)—DUTIES—SAFETY APPLIANCE ACT.

The duty of a railroad to comply with the federal Safety Appliance Act is absolute, and it is no excuse that the company exercised reasonable care and effort to comply with the law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 215, 255; Dec. Dig. 111(1).]

8. MASTER AND SERVANT 204(2), 228(2)—INJURIES TO SERVANT—ASSUMPTION OF RISK—CONTRIBUTORY NEGLIGENCE.

Safety Appliance Act, § 2 (Comp. St. 1913, § 8606), declares that after a fixed date it shall be unlawful for any common carrier to haul or permit to be used on its line any car in moving interstate traffic not equipped with automatic couplers, while section 8 (section 8612) declares that any employé of any common carrier who may be injured by any locomotive, car, or train in use contrary to the provision of the act shall not be deemed to have assumed the risk although continuing in the employment after the unlawful use had been brought to his knowledge. Federal Employers' Liability Act, § 3 (Comp. St. 1913, § 8659), declares that, in all actions brought against any common carrier by railroad to recover damages for personal injuries, the fact that the employé may have been guilty of contributory negligence shall not bar recovery, but damages shall be diminished in proportion to the amount of negligence attributable to such employé, but no employé who may have been injured or killed shall be held to have been guilty of contributory negligence, where the violation of any statute enacted for the safety of any employés contributed to the death of such employé. Section 4 (Comp. St. 1913, § 8660) declares that an employé shall not be held to have assumed the risk of his employment in any case where the violation by such common carrier of any statute enacted for his safety contributed to his injury or death. Plaintiff, a switchman, who went between the cars because the automatic coupler was broken, was injured when his foot caught in a frog and other cars

---

For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

237 F.—1      *Rehearing denied December 4, 1916.

passed over him. *Held* that, as plaintiff would not have been in a position of danger had the coupling been in proper order, his action for damages cannot be defeated on the ground of contributory negligence or assumption of risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 545, 671; Dec. Dig. ☜204(2), 228(2).]

4. JUDGMENT ☜248—CONFORMITY—PLEADING AND PROOF.

In a negligence action, recovery can be had only on the case pleaded and proven.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 434; Dec. Dig. ☜248.]

5. MASTER AND SERVANT ☜112(4)—INJURIES TO SERVANT—RAILROAD COMPANY.

A railroad company is not liable for an accident due to an unblocked frog, though it may be liable where a switchman caught his foot in a frog which had been originally blocked but had been allowed to fall into disrepair.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 221; Dec. Dig. ☜112(4).]

6. MASTER AND SERVANT ☜264(4)—INJURIES TO SERVANT—ACTIONS—EVIDENCE—VARIANCE.

The petition of a railroad switchman alleged that, because of a defect in a coupler, he went between the cars, fixed the coupler with his hands, and gave the signal to back the other cars, but that, when he attempted to step from between the cars, his foot was caught in an unblocked switch or frog, or open space between two rails, and he was injured when the cars ran him down. Averments that the railroad company had negligently failed to block the switch were stricken. *Held* that, as allegations in the petition as to the condition of the frog or switch contained in the recital of the accident were not stricken, evidence thereof was admissible despite the rule that the proof must be restricted to the allegations.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 865; Dec. Dig. ☜264(4).]

7. APPEAL AND ERROR ☜1053(7)—REVIEW—HARMLESS ERROR.

In such case, the admission of evidence concerning the frog was harmless, where the court charged the jury that there was only one question, and that was the condition of the coupler, and that if the couplers on the cars were intact and in good order there could be no recovery.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4183; Dec. Dig. ☜1053(7); Trial, Cent. Dig. § 977.]

In Error to the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Action by William J. Schuerman against the St. Louis Merchants' Bridge Terminal Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

W. M. Hezel, of St. Louis, Mo. (T. M. Pierce and G. T. Priest, both of St. Louis, Mo., on the brief), for plaintiff in error.

W. H. Douglass, of St. Louis, Mo. (William H. Bartley, Jr., of St. Louis, Mo., on the brief), for defendant in error.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

SMITH, Circuit Judge. The defendant in error was the plaintiff below and the plaintiff in error was the defendant and they will be

styled as in the District Court.  The defendant, the St. Louis Mer-
chants' Bridge Terminal Railway Company, was engaged in interstate
commerce at the time here in question between St. Louis, Mo., and
East St. Louis, Ill., and the plaintiff, William J. Schuerman, was in its
employ as a switch foreman and was employed in switching cars en-
gaged in interstate commerce.  On the night of January 13, 1914, he
was directed to switch, among others, two cars, a Merchants' Despatch
Transportation Company car, hereafter for brevity called an M. D. &
T. car, and a Missouri Pacific car.  These cars, with many others, were
standing on a siding.  The train crew went in on the siding from the
north where the Missouri Pacific car was standing further south than
the M. D. & T. car, and they cut loose the cars to the south of the
Missouri Pacific car and drew the balance of the cars to the north un-
til they had passed the switch and then backed down upon the Frisco
track.  They then detached the other cars from the Missouri Pacific
car, drew them back to the switch, and replaced them on the side
track.  They there detached the cars to the rear of the M. D. & T.
car and went north with it and two other cars in advance of it to the
switch and then backed down the Frisco track to couple the M. D. &
T. car onto the Missouri Pacific.  Both these two cars had been equip-
ped with automatic couplers, the Missouri Pacific with what is known
as a Tower and the M. D. & T. with what is known as a Janney
coupling.  Both were equipped with a single lever projecting to the
left of the car as one stood facing the end of the car.  It was not the
custom in detaching and coupling cars to open the coupling on both
cars, but at this yard it was the custom to open the north coupling on
the south car at the place where it was desired to detach or couple
the cars.  In this way the north coupling was supposed to be open on
the Missouri Pacific car and the south coupling on the M. D. & T.
was supposed to be closed.  The plaintiff testified that, as they were
about to make the coupling:

"I found the knuckles closed.  I tried to open the knuckle on the Missouri
Pacific with the lever that is on the side of the car, and I found that the
knuckle wouldn't open very well, so by working the lever with one hand—
and they got what they call a little pit or a nipple, I don't know what they,
that's what we call it among railroad men—by working that back and forth,
that little thing that holds the lock, it lets the knuckle get open.  So I
opened this knuckle, gave a sign to back up, and these cars hit and the
coupling didn't make.  I then went in between them and opened the knuckle
on the M. D. T. car, gave a signal to back up, and when these cars hit again
the coupling didn't make.  So I was wondering what the trouble was.  I
stepped in between them, then, and looked and found that the lock pin that
locked this knuckle was half broken off, that the knuckle lock worked itself in
behind the knuckle; that wouldn't allow the knuckle to close.  The bottom
half was broken off.  So then I had to take this pin and knuckle and every-
thing out and set it on the ground, fix this knuckle lock and pick this
knuckle back up and put this up in the car and fix it in position that part
of this knuckle lock would hold it together enough that I could get this car
out there.  After I done that, I turned right around and went back to this
Missouri Pacific, which was about four or five feet away, and had to go
through that same thing again of opening that knuckle.  After doing that
and opening this knuckle, I started out and gave the signal.  As I gave the
signal, why, I went to make the second step, and I noticed that this foot had
wedged itself in down between the two rails, so the only thing now to my mind
then is to give a stop sign.  As I did, I throwed myself down, and I went to

use this right foot of mine to try to kick this left foot loose before the wheels caught it, but the first kick I got, the wheels ran on up on both feet and the car stopped there."

It appears that in the last effort to make the coupling the plaintiff, in attempting to leave his place of danger between the cars and after he had given the signal to back up, found his foot caught in the frog and was unable to get it out, and the train backed down cutting off the front portion of the left foot and severely injuring the right foot and ankle. The case was tried to a jury who returned a verdict for the plaintiff, upon which judgment was rendered, and the defendant sued out this writ of error.

It is doubtful whether there is anything in the brief of plaintiff in error amounting to a specification of errors as required by the second subdivision of the second paragraph of rule 24 of this court (150 Fed. xxxiii, 79 C. C. A. xxxiii), but this question is not raised by defendant in error, and under the head of "Points and Authorities," apparently under the third division of the second paragraph of rule 24, we find what we assume to be the errors relied on as follows:

"I. The District Court erred in refusing to give, at the close of the whole case, the following instruction requested by the defendant: 'The court instructs the jury that under the pleadings and the evidence the plaintiff is not entitled to recover and your verdict must be for the defendant.' For the reason that neither under plaintiff's nor defendant's testimony did any defective condition of the coupler contribute in whole or in part, in any legal sense, to the injury. The plaintiff's act was the sole cause of the accident.

"II. The District Court erred in admitting in evidence on behalf of the plaintiff, over the objections and exceptions of the defendant, testimony by plaintiff that at the place where the accident happened the blocking of the switch point or the space between the rails had become worn so as to leave an opening in which plaintiff's foot, or feet, were caught when he was attempting to come out between the cars. There was no allegation of worn or defective blocking in the petition and it is elementary that a plaintiff must stand or fall under the specific allegations of his petition.

"III. The District Court erred in refusing to give the following instruction requested by the defendant: 'The court instructs the jury that, though you find and believe from the evidence that the coupler of either of the cars in question was defective, yet if you find and believe from the evidence that the coupler of either car, or both of said cars, were adjusted by the plaintiff while all the cars were standing still and that the plaintiff after said adjustment signaled for a come-back movement while still wholly or in part between the cars, and the cars attached to the engine were moved backwardly and plaintiff ran upon or over, then the court instructs the jury that said signal so given was the proximate cause of the accident and your verdict must be for the defendant.' For the reason that it affirmatively and without contradiction appears that the defective condition of the couplers, as stated by the plaintiff in his testimony, did not contribute to the injury, but, on the contrary, the negligent conduct of the plaintiff was the sole cause of the injury."

[1] We shall briefly consider these three alleged errors. This suit was brought under the Employers' Liability Act law of April 22, 1908, 35 Stats. 65 (Comp. St. 1913, §§ 8657–8665), and under what is known as the Safety Appliance Act of March 2, 1893, 27 Stats. 531, as amended by the Act of April 1, 1896, 29 Stats. 85 (Comp. St. 1913, §§ 8605–8612), and the Act of March 2, 1903, 32 Stats. 943 (Comp. St. 1913, §§ 8613–8615).

As at the outset of the trial it was admitted that the defendant was engaged in interstate commerce, and that the plaintiff at the time in question was employed by the defendant in interstate business, there seems to be no doubt that the suit was properly brought under the Employers' Liability Act, and that it and the Safety Appliance acts must determine the question of the liability of the defendant. Southern Railway Co. v. United States, 222 U. S. 20, 32 Sup. Ct. 2, 56 L. Ed. 72.

[2, 3] The Act of March 2, 1893, 27 Stats. 531, contained the following provision:

"Sec. 2. That on and after the first day of January, eighteen hundred and ninety-eight, it shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

"Sec. 8. That any employé of any such common carrier who may be injured by any locomotive, car, or train in use contrary to the provision of this act shall not be deemed thereby to have assumed the risk thereby occasioned, although continuing in the employment of such carrier, after the unlawful use of such locomotive, car, or train had been brought to his knowledge."

And the said Employers' Liability Act of April 22, 1908, 35 Stats. 65, contained the following provision:

"Sec. 3. That in all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this act to recover damages for personal injuries to an employé, or where such injuries have resulted in his death, the fact that the employé may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employé: Provided, that no such employé who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employés contributed to the injury or death of such employé.

"Sec. 4. That in any action brought against any common carrier under or by virtue of any of the provisions of this act to recover damages for injuries to, or the death of, any of its employés, such employé shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employés contributed to the injury or death of such employé."

These statutes have been the subject of numerous decisions by the Supreme Court of the United States.

It has been held that the duty to comply with the Safety Appliance Act is absolute and that it is no excuse that the railroad company has used reasonable care and effort to comply with the law. St. Louis, Iron Mountain & Southern Ry. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061; C., B. & Q. Ry. v. United States, 220 U. S. 559, 31 Sup. Ct. 612, 55 L. Ed. 582; C., R. I. & P. Ry. v. Brown, 229 U. S. 317, 33 Sup. Ct. 840, 57 L. Ed. 1204; Delk v. St. Louis & San Francisco R. R. Co., 220 U. S. 580, 31 Sup. Ct. 617, 55 L. Ed. 590. It will be observed that section 8 of the original Safety Appliance Act, 27 Stats. 532, abolished the defense of assumption of risk as against persons in the situation of plaintiff; that the Employers' Liability Act substituted the law of comparative negligence for the common-law rule of contributory negligence, and contributory negligence ceased to

be an absolute bar to actions under that law but simply went in mitigation of damages. By the proviso to section 3 contributory negligence ceased to be admissible in mitigation of damages if the company had violated the Safety Appliance Act and such violation had caused the injury.

Section 4 of this act reiterated the provision in the Safety Appliance Act abolishing the defense of assumption of risk. In Atlas Portland Cement Co. v. Hagen, —— C. C. A. ——, 233 Fed. 24, the court attempted to point out the distinction between the doctrine of assumption of risk and the doctrine of contributory negligence and called attention to the fact that the doctrine of assumption of risk always arises on contract, express or implied, while the doctrine of contributory negligence always arises in tort. While the Safety Appliance Act abolishes assumption of risk, it does not abolish that of contributory negligence. Schlemmer v. Buffalo, etc., Ry. Co., 220 U. S. 590, 31 Sup. Ct. 561, 55 L. Ed. 596; Same v. Same, 205 U. S. 1, 27 Sup. Ct. 407, 51 L. Ed. 681. But the proviso in the third section of the second employers' liability law provides that if suits are under the Employers' Liability Act and the Safety Appliance Law there is no defense of contributory negligence. Grand Trunk Ry. Co. v. Lindsay, 233 U. S. 42, 34 Sup. Ct. 581, 58 L. Ed. 838, Ann. Cas. 1914C, 168. It may be conceded that, under both the Safety Appliance Act and the Employers' Liability Act, if the negligence of the employé was the sole cause of the accident, he cannot recover as against the company; but it is now elementary that there may be several concurring or co-operating causes of an accident, and, without stopping to review the innumerable authorities upon proximate cause, we are of the opinion that, if the plaintiff had not been compelled to go between the cars to effect this coupling, he would not have been injured, and that the statutes expressly provide that under the circumstances neither the defense of assumption of risk nor contributory negligence will be available to the defendant. It may be remarked in passing that the only cases cited by plaintiff in error on this subject either affirmed judgments against the company or reversed the case for the refusal to submit the same to the jury.

[4-7] Turning now to the second point: The evidence showed the point of the switch had been blocked, but the blocking had become worn by the flanges of the cars, and in attempting to leave the place between the cars plaintiff's foot became caught and held him there until he was injured. It is claimed the plaintiff in his amended petition charged that this place had been negligently left unblocked, and this was stricken out by the plaintiff upon a motion being made to strike it by the defendant, and it inferentially so appears. It is clear that plaintiff could only recover on the case alleged and in support of which some evidence was offered.

The Supreme Court has held that no action will lie against a railroad company for an accident due to an unblocked frog. Southern Pacific v. Seley, 152 U. S. 145, 14 Sup. Ct. 530, 38 L. Ed. 391; Kilpatrick v. Choctaw, Oklahoma & Gulf Ry., 195 U. S. 624, 25 Sup. Ct.

789, 49 L. Ed. 349. If the allegation claimed was in the petition, it stated no cause of action, and the plaintiff wisely struck it out after it was attacked by the defendant. There never was any controversy in this case as to what would have been the applicable law if the company had blocked the point in question if it allowed the blocking to be out of repair. The Supreme Court said in Southern Pacific Co. v. Seley, supra:

"It was not pretended in the present case that the frog in which Seley had put his foot was defective or out of repair. The contention solely is that there is another form of frog, not much used, and which, if used by the defendant, might have prevented the accident."

If the facts as shown upon the trial, namely, that the point of the switch had been blocked but the blocking had been allowed to get out of repair, had been alleged, this portion of the petition might have stated a good cause of action; but this is aside from the question. It is, of course, an elementary rule that the evidence must correspond to the allegations and be confined to the point in issue; but this does not mean that every explanatory fact must be alleged or be inadmissible. It was essential for the plaintiff to show that he had been injured and the sustaining of this injury was not willful on his part. The amended bill upon which the case was tried expressly alleged:

"That after plaintiff had opened the couplers of said cars he attempted to step out from between them, when his left foot was caught in an unblocked switch or frog or open space between two rails."

No motion was ever made to strike this allegation from the petition; but, when the same facts were set up as a special ground of negligence, that portion of the petition was so attacked. On the trial it was shown that the point in question had been blocked, but the blocking had become worn and plaintiff's foot caught in it and he could not pull it away. When the court came to charge the jury, it said:

"Now, there is but one question in here, practically, as I see it. That is the question of the condition of this coupler."

And again:

"If, from all the evidence in this case, you believe that the couplers on the two cars mentioned here in the evidence were intact, complete, perfect order, then there can be no recovery here. If they were not, then there can."

If therefore there was any error in the admission of the evidence, and we think there was not, it was wholly cured by the charge submitting the case upon the single question of the condition of the couplers.

The third point raised is substantially submitted upon the same argument offered in support of the first one, and for the same reasons is not well taken.

There is no error, and the judgment of the District Court is affirmed.