MILLIE A. CHRISTENSON, ADMINISTRATRIX, APPELLEE, V. UNION PACIFIC RAILROAD COMPANY, APPELLANT.

290 N. W. 246

FILED FEBRUARY 9, 1940. No. 30720.

*Thomas F. Hamer, George C. Holdrege* and *William J. Schall,* for appellant.

*Gross & Crawford, Gordon A. Nicholson* and *P. C. Rasmussen, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ.

CARTER, J.

This is an action against the Union Pacific Railroad Company to recover damages for the death of one Tom G. Christenson under the provisions of the federal employers' liability act. From a judgment for plaintiff in the amount of $15,000 the defendant appeals.

In the latter part of February, 1937, the deceased entered the employ of the defendant at Bennett, Colorado, as a structural steel worker in the construction of a railroad bridge at that point. The deceased was a journeyman steel worker of many years actual experience at the trade. The bridge under construction was a new six-span steel girder bridge and was being constructed in sections in conjunction with the removal of the old bridge in such a way as not to interfere with railroad traffic schedules. At the time involved herein, five spans of the bridge had been completed and the bridge gang was engaged in the construction of the west and last span.

A general description of the construction of the bridge is as follows: The piling for the new bridge were driven and capped. Heavy steel girders were then put in place on the piling lengthwise of the bridge. Thereafter sections of the old wooden bridge were removed and replaced with the floor beams, stringers, ties and rails of the new bridge. The two steel girders were each approximately seven feet in height and had a three-plate steel flange, 18 inches in width, on the top and bottom. The web of the girder was attached to the flange by angle irons riveted to the web and flange on each side of the web at both the top and bottom. At approximately every twelve feet a vertical angle iron was riveted to the web of the girder to which the floor beams were to be swung in and attached by bolting a second angle iron to the web of the girder and through the web of the floor beam. The floor beams were about 40 inches high, 16½ feet long, with a flange on both top and bottom. The structure also required lateral bracing to guard against side sway and vibrations caused by wind and the speed and braking of trains. This bracing was obtained by running

angle iron braces from the juncture of the girder and floor beam to a similar point on the next floor beam on the opposite girder. To tie the girder, floor beam and lateral brace together, a gusset plate was provided, which was eventually to be bolted to the top of the inside lower flange of the girder, the under side of the lower flange of the floor beam and to the under side of the lateral brace. It must be noted, however, that the floor beam, when properly installed, is connected to the web of the girder and does not rest upon the lower flange of the girder. Likewise, the gusset plate is patterned so that it fits around the angle irons attaching the floor beam to the web of the girder. The result is that the floor beam does not rest upon the gusset plate. The gusset plates come into the structure loosely bolted to the lower inside flange of the girder, with the result that they take a sloping position until they are bolted up tight. It was the general practice on this job to swing in the floor beam, temporarily bolt it in place, put in the stringers, ties and rails, and then return and bolt up sufficiently to carry railroad traffic. During this last operation the gusset plate is bolted to the top of the lower flange of the girder and bolted up to the lower flange of the floor beam. The deceased was engaged in performing this operation when he slipped and fell to his death.

The gusset plate is approximately 25 inches wide and 22 inches long. When in place it extends 6½ inches beyond the lower flange of the floor beam on each side of it and 15 inches beyond the lower flange of the girder on each side of the floor beam. The evidence is that the deceased, in tightening or drawing up the gusset plate had his left knee on the lower flange of the girder and the ball of his right foot on the corner of the gusset plate. The record shows also that the gusset plate was wet from moisture which had fallen during the morning. The lower end of the gusset plate was estimated to be from one and three-fourth inches to three inches lower than level. The evidence shows that deceased's right foot slipped off the inclined gusset plate, resulting in the accident.

It is contended by plaintiff that the accident and the resulting damage were due to the negligence of the defendant. The answer of the defendant denies that it was negligent, and asserts that the risks and dangers of the employment and particularly those resulting in the accident itself were open, obvious and known to the deceased and were assumed by him.

It is not disputed that the case falls within the provisions of the federal employers' liability act and that the liability imposed thereunder is for negligence. 45 U. S. C. A. sec. 51. Neither is it questioned that the rights and obligations of the parties under the act depend upon it and applicable principles of common law, as interpreted and applied by the federal courts. And, likewise, it is not questioned that contributory negligence will not defeat a recovery but will result only in a reduction of the damages in proportion to the amount of negligence attributable to the employee. 45 U. S. C. A. sec. 53. And, further, that the doctrine of assumption of risk applies in an action based on the negligence of the defendant unless exceptions within the act, having no application to the case at bar, control. 45 U. S. C. A. sec. 54. *Seaboard Air Line Ry. v. Horton,* 233 U. S. 492, 34 S. Ct. 635, 58 L. Ed. 1062.

The deceased was doing the work of a lead man; in other words, he was the farthest out on the newly constructed bridge skeleton. Consequently, he was in the most dangerous position of any of the workmen. He had to do his work of temporary bolting up by clinging to the partially constructed bridge as best he could. He knew this, as he was a steel worker of many years experience. No repairman, inspector or scaffold builder preceded him, for he was the lead steel man on the job. He also knew that the gusset plate was loosely bolted to the girder because all the others had been attached the same way. Also, he had previously been down on the girder, floor beam and gusset plate to put in the temporary bolts when the floor beam was swung into position by the hoist. He knew the condition of the weather and undoubtedly of the effect of moisture upon

the painted gusset plate. He knew, or ought to have known, that the gusset plate was loosely bolted and in a sloping position because he was the only workman who had an opportunity to put it in any different position, and, in the second place, he was engaged in the very act of drawing up the gusset plate, which in itself charges him with knowledge that it was neither tight nor level. There is evidence in the record that the gusset plate was not tightened up until the floor beam was set, in order to leave the necessary slack to permit the insertion of all the bolts tying it to the girder and floor beam. To relate all the details of the evidence would unduly add to the length of this opinion. From a consideration of all the evidence, however, we conclude that Christenson's use of the gusset plate in the condition shown by the evidence was one of the usual and ordinary risks of his employment. There is evidence that the gusset plate was bent downward and that it was defective in this respect. This can make no difference in the result. Deceased knew or ought to have observed the condition of the gusset plate. We think that the applicable rule is that, when the risks were the usual and ordinary risks of the employment, knowledge of the condition, or a want thereof, by the deceased would be immaterial. He will be presumed to have assumed such risks, whether he knew of them or not. On the other hand, if the deceased knew or ought to have known the condition, he must be held to have assumed the risk, even though the risk may have been unusual and extraordinary. *Toledo, St. L. & W. R. Co. v. Allen*, 276 U. S. 165, 48 S. Ct. 215, 72 L. Ed. 513; *Boldt v. Pennsylvania R. Co.*, 245 U. S. 441, 38 S. Ct. 139, 62 L. Ed. 385; *Campbell v. Chicago, R. I. & P. R. Co.*, 120 Neb. 499, 234 N. W. 395.

It is contended that the defendant was negligent in not putting in the lateral bracing prior to swinging in the floor beam, thereby providing a better place for the workmen to work. There is evidence in the record that it was a proper practice to place the floor beam first. There is also evidence to the contrary. Comparative merits as to safety or utility are most difficult to determine. Ofttimes two methods for

doing a certain piece of work exist, each having meritorious points as to safety and expediency. It is clearly the rule that, if an employer chooses one of two recognized methods of doing a piece of work, the fact that he may have selected the one which did not prove to be the safer does not constitute negligence by the employer towards an employee subsequently injured. Such a choice of plans breaches no duty owed to the employee. *Baltimore & Ohio R. Co. v. Groeger,* 266 U. S. 521, 45 S. Ct. 169, 69 L. Ed. 419; *Southern Pacific Co. v. Seley,* 152 U. S. 145, 14 S. Ct. 530, 38 L. Ed. 391; *Louisville & N. R. Co. v. Davis,* 75 Fed. (2d) 849.

It is contended that the work in question was being done under emergent conditions for the reason that train schedules over the bridge had to be maintained. There is evidence in the record indicating that a general "hurry up" order had been given by the foreman in charge. This does not change the rule nor affect the result. *Chesapeake & Ohio R. Co. v. Kuhn,* 284 U. S. 44, 52 S. Ct. 45, 76 L. Ed. 157.

It is likewise contended that the defendant was required to provide a reasonably safe place to work. The rule ordinarily applied has no application when the employee is engaged in the construction or demolition of structures where the successive temporary conditions through which such structures must pass are in their very nature hazardous. *Armour v. Hahn,* 111 U. S. 313, 4 S. Ct. 433, 28 L. Ed. 440; *Kuptz v. Ralph Sollitt & Sons Construction Co.,* 88 Fed. (2d) 532.

Plaintiff contends that a reasonable inspection would have revealed the danger to the deceased, and the direction of the foreman for deceased to bolt up was a negligent act under the circumstances. The questions are ably answered in *Kuptz v. Ralph Sollitt & Sons Construction Co., supra,* wherein the court said: "If the insecure condition of the form could have been ascertained by a reasonably prudent inspection, plaintiff was as much bound in duty to himself to exercise the prudence of making that inspection as was the defendant, and could have as easily discovered the danger. * * * Plaintiff being an adult experienced workman,

and the danger complained of being open and patent, defendant was under no obligation to exercise for plaintiff's safety any greater degree of care than plaintiff was willing to exercise for his own safety. Defendant did not direct plaintiff to go upon these forms, nor represent that these forms were safe. Defendant's superintendent in effect simply told the plaintiff the roof was ready for electrical work and to proceed with it. This was not a warranty that the forms were safe, nor an implied invitation to enter upon them as a safe place to work. Though it was customary for workmen to walk on these forms, plaintiff could have supported himself upon the steel girders which were in place. Choice of methods was entirely with plaintiff."

We necessarily come to the conclusion that the defendant was building the bridge in question by recognized engineering methods. There may have been, it is true, other methods which were safer, but the failure to use the best method is not in itself negligence. In any event, the deceased was an experienced structural steel worker and bridge builder who was familiar with the methods being used. He was in a dangerous place when he fell to his death. He knew it was a dangerous place, the nature of his trade required him to do dangerous work. He was familiar with the situation as it existed. We must necessarily hold that he assumed all the risks which the evidence shows he knew existed at that time. They were risks attendant upon a vocation in its nature very hazardous. We fail to find that the defendant violated any duty which it owed to this unfortunate employee. No negligent act of the defendant added to the risk of the employment, unless we should hold that the construction of a structure, temporarily dangerous by necessity, is of itself negligence, which, of course, is not the law. In any event, if any of the acts of the defendant could be construed to be negligent acts, the deceased assumed the risk and no recovery therefore can be had.

The judgment of the district court is reversed and the cause dismissed.

REVERSED AND DISMISSED.