## UNITED STATES v. GULF, MOBILE & OHIO R. CO.

## SAME v. NEW ORLEANS PUBLIC BELT RAILROAD.
### Civ. No. 972.
### Civ. No. 973.

District Court, E. D. Louisiana,
New Orleans Division.
March 19, 1948.

A. L. Ponder, Jr., Asst. U. S. Atty., of New Orleans, La., and James O. Tolbert, Atty., Interstate Commerce Commission, Sp. Asst. to the U. S. Atty., of Washington, D. C., for the Government.

John C. Foster (of Curtis, Hall & Foster), of New Orleans, La., for defendant Gulf, Mobile & Ohio R. Co.

Michel Provosty, of New Orleans, La., for defendant, New Orleans Public Belt Railroad.

WATSON, District Judge.

These two actions are brought by the United States under the Safety Appliance Acts, 45 U.S.C.A. §§ 1–16. Specifically in question is the application of Section 2, which reads as follows: "It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." The actions were consolidated, as they involve two movements of the same car with the same defect alleged in both actions, and were tried without a jury.

In the first action the Government claimed that the Gulf, Mobile & Ohio Railroad hauled N.Y.C. Box Car No. 101598 to the New Orleans Public Belt Railroad when the lock lift of the coupler on the "A" end of that car was wedged in the head of the coupler to such an extent that the cars could not be uncoupled without the necessity of men going between the ends of the cars in contravention of the statute cited above.

In the second action the Government charged the New Orleans Public Belt Railroad with hauling the same car in the same condition as described above after delivery to it by the Gulf, Mobile & Ohio Railroad Company.

At the trial there was no conflict of testimony concerning the fact that the car was hauled on October 2, 1944, nor was any argument advanced that the car was not being used in carrying interstate commerce.

This Court is convinced that, if the coupler in question was in fact so wedged or jammed that it required a man to go between the ends of the cars to accomplish the uncoupling of the cars, the requirements of the Act have not been complied with by the defendants herein, and the Government is entitled to judgment as requested in its Complaint. The duty to com-

ply with the Safety Appliance Act is absolute and, when not complied with, it is no excuse that the Railroad Company has used reasonable care and effort to comply. St. Louis Merchants' Bridge Terminal Ry. Co. v. Schuerman, 8 Cir., 237 F. 1.

■ There is no prerequisite in the Act compelling the Government, or its agents, to notify the carrier of an existent defect in the couplers of cars in its custody, or of the presence of its inspectors in the yard of the carrier.

The two witnesses for the Government testified that they tested the allegedly defective coupler; one, by testing it "with both hands, using a terrific force on the uncoupling lever, sufficient force to raise the drawbar off the carrier iron,"; and the other, "tested it the same way. He didn't only pull it once, but he jerked it several times."

Such an attempt was made by these witnesses at three different times; once, while the car was in the yard of the Gulf, Mobile & Ohio Railroad Company; once, after it was coupled to an engine of the New Orleans Public Belt Railroad; and again, after the cars had been moved. At all of these times, it was testified that conditions for uncoupling the cars were favorable; that is, the cars were not pushed together or "bunched", nor were they pulled taut, but, on the contrary, there was a proper amount of slack.

The testimony of the defendants' witnesses was for the most part negative evidence. They inspected this particular cut of cars, of which the car in question was one, but did not specifically recall this particular car, as might be expected after such a length of time.

Counsel for the defendants contend that the Government did not prove that the specific defect, that of the lock lift being wedged in the head of the coupler, existed as alleged, and that the trouble may have been due to foreign matter jamming the mechanism. As heretofore stated, the Act requires absolute compliance and, if the condition of the coupler was such as to require the entry of a man between the cars to effect an uncoupling, the car should have been removed and repaired.

Judgments will be entered in favor of the plaintiff.

Findings of Fact, Conclusions of Law, and an Order directing the entry of judgment will be filed herewith.

### Findings of Fact.

1. On October 2, 1944, the Gulf, Mobile & Ohio Railroad Company had in its yard in New Orleans N.Y.C. Box Car No. 101598, which car was moved on that day to the yards of the New Orleans Public Belt Railroad.

■ 2. N.Y.C. Box Car No. 101598 was defective by virtue of the fact that the lock lift of the coupler on the "A" end of the car was jammed in the head of the coupler to such an extent that it could not be uncoupled without the necessity of a man, or men, going between the ends of the cars to do so.

3. Said defect existed while the car was in possession of both the Gulf, Mobile & Ohio Railroad Company and the New Orleans Public Belt Railroad.

### Conclusions of Law.

1. The Gulf, Mobile & Ohio Railroad Company and the New Orleans Public Belt Railroad were common carriers engaged in interstate commerce on October 2, 1944.

2. On October 2, 1944, both Railroads hauled N.Y.C. Box Car No. 101598, a car used in moving interstate traffic.

3. Defendants violated Section 2 of Title 45 U.S.C.A.

4. Plaintiff is entitled to judgment in the sum of One Hundred Dollars against the Gulf, Mobile & Ohio Railroad Company, and is also entitled to judgment in the sum of One Hundred Dollars against the New Orleans Public Belt Railroad.