**HUDGINS et al. v. KANSAS CITY, M. & O. R. CO. et al.    (No. 7137.)**

Court of Civil Appeals of Texas. Austin.
Dec. 22, 1927.

Rehearing Denied Jan. 18, 1928.

1. Evidence ⚖➡54—One presumption cannot be based on another.

It is a well-established rule that one presumption cannot be based on another.

2. Master and servant ⚖➡265(14)—Injured workman will be presumed to have been exercising due care in regard to his own safety.

Injured workman will be presumed to have exercised due care in regard to his own safety and not negligently to have exposed himself to danger.

3. Master and servant ⚖➡276(6)—Deceased brakeman's close proximity to switch frog and marks on shoes held sufficient evidence from which to draw conclusion foot was caught in frog.

In action for death of railroad brakeman, whose foot was run over and cut off by cars, brakeman's close proximity to switch frog and marks on his shoes were sufficient evidence from which to draw conclusion that his foot was caught in the frog.

4. Master and servant ⚖➡210(3)—Brakeman knowing railroad did not use blocked frogs held to have assumed risk of injury from unblocked frogs (Rev. St. 1925, art. 6437; Federal Employers' Liability Act [45 USCA §§ 51–59]).

In action for death of railroad brakeman, whose foot was caught in frog, run over, and cut off by cars, held, that since brakeman, engaged in interstate commerce, knew that railroad did not use blocked frogs on any part of its road, he had, within Federal Employers' Liability Act (45 USCA §§ 51–59 [U. S. Comp. St. §§ 8657–8665]), assumed risk of injury from frogs being unblocked, and Rev. St. 1925, art. 6437, relative to assumption of risk, did not control, regardless of whether his work was performed in day or night, or whether track was lighted or unlighted.

5. Commerce ⚖➡27(7) — Railroad brakeman switching and applying brakes to tank cars used exclusively in intrastate commerce held "engaged in interstate commerce," where train was hauling goods destined for points without state (Federal Employers' Liability Act [45 USCA §§ 51–59]).

Railroad brakeman who died from having his foot caught in frog and run over by cars while he was switching to a side track, and applying the brakes to, tank cars used exclusively in intrastate commerce, held to have been engaged in "interstate commerce," where train was hauling goods consigned to points without state; his act being so directly and immediately connected with interstate commerce business as to form a part or necessary incident thereof, so as to make the Federal Employers' Liability Act (45 USCA §§ 51–59 [U. S. Comp. St. §§ 8657–8665]) applicable.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

6. Commerce ⚖➡27(5)—Federal law will apply, where act in which employee was engaged is so directly connected with interstate commerce as to be necessary incident thereof (Federal Employers' Liability Act [45 USCA §§ 51–59]).

The general rule is that, where act in which employee is engaged is so directly and immediately connected with interstate commerce as substantially to form a part or necessary incident thereof, one who is injured in such employment will be deemed to have been engaged in interstate commerce at the time of his injury, so that the Federal Employers' Liability Act (45 USCA §§ 51–59 [U. S. Comp. St. §§ 8657–8665]) will apply.

7. Commerce ⚖➡27(5)—Not proximity in time or space of interstate and intrastate employment, but relation of intrastate to interstate employment, is test as to whether employment is interstate or intrastate (Federal Employers' Liability Act [45 USCA §§ 51–59]).

Whether, when question is whether Federal Employers' Liability Act (45 USCA §§ 51–59 [U. S. Comp. St. §§ 8657–8665]) is applicable, an employee is engaged in interstate or intrastate employment is not determinable by proximity in time or space of the two classes of

employment, as he may often and rapidly pass from one class of employment to the other, but true test is in relation of interstate and intrastate employment phases, and as to whether the intrastate employment is so related to the interstate as substantially to form a part or necessary incident of it.

Appeal from District Court, Tom Green County; J. F. Sutton, Judge.

Action by Mrs. N. C. Hudgins and others against the Kansas City, Mexico & Orient Railroad Company and another. Judgment for defendants, and plaintiffs appeal. Affirmed.

Glenn R. Lewis and J. A. Thomas, of San Angelo, for appellants.

James Cornell, Collins, Jackson & Snodgrass, of San Angelo, for appellees.

McCLENDON, J. The appellees Kansas City, Mexico & Orient Railroad Company and Gulf, Colorado & Santa Fé Railroad Company will be referred to respectively as the Orient and 'Santa Fé. On the night of March 17, 1922, N. C. Hudgins, at the time a freight brakeman in the employ of the Orient, while engaged in a switching operation at Sweetwater, was run over and received injuries, including the loss of a foot, resulting in his death. The suit was by his widow for herself and as next friend and guardian of her minor children, and by two adult children, against both companies for compensatory damages occasioned by the death of Hudgins. The trial was to a jury and the judgment was in favor of both defendants under a directed verdict. The plaintiffs have appealed, but the correctness of the judgment in favor of the Santa Fé is not questioned.

The theory of plaintiffs' case was that Hudgins met his death by getting his foot caught in an unblocked frog in which position he was held until run over, that he was engaged in exclusively intrastate commerce at the time, and that the failure to provide a blocked frog and to properly light the premises was negligence; the issue of assumed risk being governed by Revised Statutes, art. 6437.

Three contentions are urged by the Orient in support of the trial court's action in directing a verdict in favor of that company: First, that the evidence will not support a finding of negligence in not providing a blocked frog; second, that the evidence will not support a finding that Hudgins sustained the injuries from which he died in the manner alleged by plaintiffs; and, third, that Hudgins was at the time engaged in interstate commerce; that he assumed as a matter of law the risk incident to the manner in which he was injured, and therefore recovery is precluded under the Federal Employers' Liability Law (45 USCA §§ 51–59 [U. S. Comp. St. §§ 8657–8665]).

Briefly summarized, the controlling facts upon the issue of the character of commerce (whether inter or intra state) 'in which Hudgins was engaged follow:

The Orient has a line of railway extending from Alto, Okl., to San Angelo, Tex., and beyond. Between these points is Sweetwater, Tex., at which there is a connecting track with the Santa Fé. There the Orient's main line runs in a southwest northeast direction; the Santa Fé is to the south or east; the connecting track extends from a point on the Orient in a northeast direction to the Santa Fé. There is a track called the east Sweetwater siding, extending from this transfer track in a northeasterly direction and paralleling the Orient main line. The train involved was made up at Alto and was bound for San Angelo. At a division point (Hamlin, Tex.) engines and crews were changed, and there Hudgins became a member of the crew. The train contained a car of cement, consigned to a point in Arkansas and routed via the Orient to Sweetwater, and thence to destination via the Santa Fé and Missouri Pacific. Next to the engine were two empty tank cars, used for hauling water and employed at the time in exclusively intrastate commerce. These cars had to be cut out of the train at Sweetwater and left on the east Sweetwater siding. Hudgins was engaged in this operation at the time of his injuries. Upon arriving at Sweetwater, the train was stopped a short distance east or north of the Santa Fé transfer switch. The engine was uncoupled and attached to some cars on the transfer track that were blocking the Sweetwater siding. These cars were moved onto the main line, attached to the tank cars, the latter uncoupled from the rest of the train, moved forward beyond the transfer switch and kicked back so as to roll by the momentum onto the transfer track, and thence to the east Sweetwater siding, where they were to be left, with the brakes set. In order to effect this movement, the switches at the transfer track, Orient junction and at the transfer track, east Sweetwater siding junction, had to be set and it was Hudgins' duty to perform these acts. There was no eyewitness to Hudgins' injuries, and the manner in which they were brought about can only be inferred from circumstances. He was found lying by the frog at the intersection of the north or west rail of the Sweetwater siding and the south or east rail of the Santa Fé transfer track. One foot was cut off and his body lay with his foot near the frog and his head at the guard rail of the north or west rail of the Santa Fé transfer track. There was blood on the wheels of the tank cars and marks on the shoe on the injured foot, from which the witnesses drew the inference that this foot was caught in the frog at the time he was run over. It was one of the duties of Hudgins in connection with this train movement to stop the tank cars after

they had reached the east Sweetwater siding and set the brakes. To do this it was necessary for him after lining up the switches to get on top of one of the cars; and it was plaintiffs' theory that he was either preparing for or engaged in this act when his foot was caught in the frog with the resulting injuries.

The view we take of the Orient's third contention above makes it unnecessary to decide the first two contentions. We believe, however, that those contentions are not sound.

The evidence showed· that some railroads do and others do not use blocked frogs, and that such blocking was comparatively an inexpensive process and obviated a danger or hazard to trainmen in performance of their duties incident to train movements. This evidence we think raised the issue of negligence.

[1-3] We also think the evidence was sufficient to warrant a finding that Hudgins received his injuries in the manner alleged; and this without violating the well-established rule that one presumption cannot be based upon another. There is but one presumption we think it necessary to indulge; namely, that Hudgins exercised due care in regard to his own safety and did not negligently expose himself to danger. That he was run over and his foot cut off by the tank cars the circumstances conclusively demonstrate. But two theories as to the manner in which he was run over are within the range of probability: One is that he was on the track and was hit by the moving cars, and the other that he· fell either while boarding one of the cars, or after he was on top of it. His close proximity to the frog and the marks on his shoes were sufficient evidence from which to draw the conclusion that his foot was caught in the frog. That conclusion we think warranted; as more probable than that his foot was not caught in the frog, and with this theory established, and indulging only the presumption that Hudgins was in the exercise of due care for his own safety, coupled with the established fact that he was an experienced brakeman, made it extremely improbable that he ·fell from one of the cars, which the evidence shows were moving quite slowly, and in the fall caught his foot in the unblocked frog. When we exclude the theory of his falling there is left only the theory of plaintiffs that while in the exercise of due care in the performance of his duties his foot was caught in the unblocked frog, resulting in the accident and his death.

[4] Upon the issue of assumed risk the evidence shows without conflict that the Orient did not use a blocked frog on any part of its road. Hudgins was an experienced brakeman and had been in the employ of the Orient for a number of years, and must necessarily have been thoroughly familiar with the fact that the company did not block any of the frogs on its line. Under these circumstances he assumed the risk of injury from unblocked frogs, regardless of whether the work in which he was employed was performed in the day or the night, and whether the track was lighted or unlighted. St. Louis Southwestern Ry. v. Hynson, 101 Tex. 543, 109 S. W. 929; Southern P. Co. v. Seley, 152 U. S. 145, 14 S. Ct. 530, 38 L. Ed. 391.

[5-7] That he was engaged in interstate commerce at the time he received the injuries resulting in his death is concluded we think by the case of New York Central & Hudson River Railroad Co. v. Carr, 238 U. S. 260, 35 S. Ct. 780, 59 L. Ed. 1298. The general rule is that, where the act in which the employee is engaged "is so directly and immediately connected with such business [interstate commerce] as substantially to form a part or a necessary incident thereof," he will be deemed to be engaged in interstate commerce and the Federal Employers' Liability Law will apply. It is well settled that a railroad employee may "often and rapidly pass from one class of employment to another." Proximity in time or space of the two classes of employment does not furnish a proper test. The true test is in their relation. If the ·act engaged in is so related to interstate transportation "as substantially to form a part or a necessary incident thereof," it will be deemed in law an act in furtherance thereof, and the federal law will apply.

The facts in the Carr Case are in all essential elements on all fours with those of the case at bar. There the train had in it cars employed both in inter and intra state commerce and was moving between division points wholly within the state of New York. At a point on the journey the train was stopped· for the purpose of cutting out of the train two cars· that were employed in intrastate commerce solely. The engine had moved these cars away from the train and placed them on a siding. It was Carr's duty to set the brakes and he was in the act of doing this when he was thrown·from the top of one of the cars by the rapid whirling of the brake wheel ·caused by a sudden breaking of the air hose by one of the other employees without shutting off the air in the operation of uncoupling the engine from the cars. Carr· was a member of the train crew. The train was held to be an interstate train by virtue of the fact that it was handling interstate freight. The particular operation in which Carr was engaged at the time, however, was in the setting of the brakes on a car which had been disconnected from the train and placed upon a siding and which was employed wholly in intrastate commerce. The court say:

"The plaintiff was a brakeman on an interstate train. As such, it was ·a part of his duty to assist in the switching, backing, and uncoupling of the two cars so that they might be left on a siding in order that the interstate

train might proceed on its journey. In performing this duty it was necessary to set the brake of the car still attached to the interstate engine, so that, when uncoupled, the latter might return to the interstate train and proceed with it, with Carr and the other interstate employees, on its interstate journey."

Appellants seek to draw a distinction in principle between the Carr Case and the case at bar from the fact that in the latter the two cars which were being cut out of the train had been disconnected from the engine and were rolling on to a siding, where they had to be stopped and the brakes set. We are unable to concur in the contention that this difference in the facts requires the application of a different principle. Hudgins was clearly a member of an interstate train crew. In handling the two classes of freight in one train it was essential to cut out cars at the points where destined and an essential element in this cutting out was placing them on a siding with the brakes set. The act of cutting out the two tank cars was a single operation and each thing essential to be done in the proper performance of that operation was a proper and even a necessary part thereof. So long, therefore, as Hudgins was engaged in this operation of setting out these cars, including leaving them on the siding with the brakes set, he was performing an act "so directly and immediately connected with such [interstate commerce] business as substantially to form a part or a necessary incident thereof," and was therefore engaged in interstate commerce, and the federal law applies.

The trial court's judgment is affirmed.

Affirmed.