

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-22-00030-CR

_____

JOHNATHAN NIGHTINGALE TANNER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 51128-A

Before Morriss, C.J., Stevens and van Cleef, JJ.
Memorandum Opinion by Justice Stevens

# MEMORANDUM OPINION

A bench trial resulted in Johnathan Nightingale Tanner's conviction of continuous violence against the family. After it found the State's punishment enhancement allegation true, the trial court sentenced Tanner to eighteen years' imprisonment. On appeal, Tanner argues that (1) he never waived his right to a jury trial, (2) the evidence was not sufficient to support the trial court's finding of true to the State's punishment enhancement allegation, and (3) the trial court erred by considering victim-impact testimony at sentencing.

We find that Tanner was not harmed by the lack of a written waiver of his right to a jury trial, sufficient evidence supports the State's enhancement allegation, and Tanner's complaint about victim-impact testimony is unpreserved. As a result, we affirm the trial court's judgment.

## I. Tanner Was Not Harmed by the Lack of a Written Waiver of His Right to a Jury Trial

In his first point of error on appeal, Tanner argues that his constitutional and statutory rights were violated when he was tried by the bench, allegedly in the absence of a jury trial waiver. Because the trial court's judgment recites that Tanner waived his right to a jury trial, we conclude that Tanner has not established constitutional error and that, although statutory error is shown, he was not harmed by it.

"As a matter of protecting a defendant's constitutional right to a jury trial, the State must establish on the record an express, knowing, and intelligent waiver." *Munguia v. State*, 636 S.W.3d 750, 757 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) (citing *Hobbs v. State*, 298 S.W.3d 193, 197 (Tex. Crim. App. 2009)). "A defendant's mere acquiescence in proceeding to trial without a jury does not constitute an express waiver." *Id.* (citing *Ex parte Lyles*, 891

2

S.W.2d 960, 962 (Tex. Crim. App. 1995)). Even so, "[n]either the federal nor the state constitution requires that trial by jury be waived in writing." *Id.* (citing *Johnson v. State*, 72 S.W.3d 346, 348 (Tex. Crim. App. 2002)).

Tanner essentially argues that the record is silent as to whether he made an express, knowing, or intelligent waiver. "A jury waiver is never presumed from a silent record, at least on direct appeal." *Id.* (citing *Samudio v. State*, 648 S.W.2d 312, 314 (Tex. Crim. App. 1983)). That said, "we do not have a silent record before us in this appeal." *Id.* Here, the trial court's judgment recited that Tanner "waived the right of trial by jury." "[T]he recitation of a waiver of jury trial is sufficient to establish the waiver of appellant's constitutional right to a jury trial, unless there is direct proof of its falsity." *Id.* at 758. This is because "[t]he presumption of regularity applies to all judgments, including form judgments." *Id.* at 759 (citing *Breazeale v. State*, 683 S.W.2d 446, 450 (Tex. Crim. App. 1984) (op. on reh'g)). After scouring the record, we conclude that there is no direct proof of falsity in the trial court's recital that Tanner waived his right to a jury trial. As a result, we find no constitutional error.

Even so, statutory error is shown. "Article 1.13 of the Texas Code of Criminal Procedure requires a defendant who waives his right to a jury trial to do so in writing in open court with the approval of the court and the State." *Clark v. State*, 592 S.W.3d 919, 931 (Tex. App.—Texarkana 2019, pet. ref'd) (citing TEX. CODE CRIM. PROC. ANN. art. 1.13(a) (Supp.)). "Failure to comply with Article 1.13(a) is statutory error subject to a harm analysis under Rule 44.2(b) of the Texas Rules of Appellate Procedure, which requires us to disregard error that does not affect

3

a defendant's substantial rights." *Id.* (citing *Johnson v. State*, 72 S.W.3d 346, 348–49 (Tex. Crim. App. 2002) (citing TEX. R. APP. P. 44.2(b))).

To determine if Tanner "was harmed by the failure to execute a written waiver, we . . . ascertain whether he understood his right to trial by jury before his bench trial began." *Id.* at 932 (quoting *Johnson*, 72 S.W.3d at 348–49). Because a recital of a jury trial waiver "is 'binding in the absence of direct proof of [its] falsity,'" statements made in the recital shed light on the question of whether a defendant has understood his right to a jury trial. *Id.* (alteration in original) (quoting *Johnson*, 72 S.W.3d at 349 (quoting *Breazeale v. State*, 683 S.W.2d 446, 450 (Tex. Crim. App. 1984) (op. on reh'g)). For example, the Texas Court of Criminal Appeals has found that a judgment's recital that a defendant waived his right to a jury trial "presumes [a defendant's] knowledge, because 'to waive a right one must do it knowingly—with knowledge of the relevant facts.'" *Id.* (quoting *Johnson*, 72 S.W.3d at 349 (quoting BLACK'S LAW DICTIONARY 1276 (7th ed. abridged 2000))). "In addition, 'waiver' is defined as 'the act of waiving or intentionally relinquishing or abandoning a known right, claim, or privilege.'" *Id.* (quoting *Johnson*, 72 S.W.3d at 349 (quoting WEBSTER'S INTERNATIONAL DICTIONARY 2570 (1966))).

Here, we find that the trial court's recital, which was binding since there was no direct proof of its falsity, showed that Tanner knew of his right to a jury trial and intentionally relinquished that right. Our finding is supported by the record because, before the trial, Tanner's counsel announced ready after stating, "The Supreme Court has talked about . . . unnecessary delay and we made our jury demand and we set this for a bench trial today just to move it."

4

Counsel's words support the inference that Tanner was aware of his right to a jury trial but wished for a speedier trial by the bench. Also, although Tanner was present, he did not indicate surprise about counsel's statement and, though he filed a motion for a new trial, Tanner never complained of the lack of a jury trial until appeal. As a result, we conclude that Tanner's substantial rights were not affected by the lack of a written jury trial waiver.

We conclude that Tanner's constitutional rights to a jury trial were not violated. As for the statutory violation, just as the Texas Court of Criminal Appeals held in *Johnson*, we likewise hold that Tanner was not harmed by the lack of a written jury trial waiver. As a result, we overrule Tanner's first point of error.

## II. Sufficient Evidence Supports the State's Enhancement Allegation

In his second point of error, Tanner argues that the evidence was not sufficient to establish a prior offense. We disagree.

The State's punishment enhancement allegation alleged that Tanner "on the 4th day of April, 2011, in cause number 10-1044-CFB in the Third Judicial Circuit Court in and for Columbia County, Florida . . . was finally convicted of the felony offense of Burglary of a Dwelling." "To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists . . . and (2) the defendant is linked to that conviction." *Henry v. State*, 466 S.W.3d 294, 301 (Tex. App.—Texarkana 2015) (quoting *Reese v. State*, 273 S.W.3d 344, 347 (Tex. App.—Texarkana 2008, no pet.) (quoting *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007))), *aff'd*, 509 S.W.3d 915 (Tex. Crim. App. 2016). "No specific document or mode of proof is required to prove these two

elements." *Id.* (quoting *Flowers*, 220 S.W.3d at 921). "In proving prior convictions, identity often includes the use of a combination of identifiers, and '[e]ach case is to be judged on its own individual merits.'" *Id.* (quoting *Littles v. State*, 726 S.W.2d 26, 30–32 (Tex. Crim. App. 1984) (op. on reh'g)). "The totality of the circumstances determines whether the State met its burden of proof." *Id.* (citing *Flowers*, 220 S.W.3d at 923).

"[T]he proof that is adduced to establish that the defendant on trial is one and the same person that is named in an alleged prior criminal conviction or convictions closely resembles a jigsaw puzzle." *Flowers*, 220 S.W.3d 919, 923 (Tex. Crim. App. 2007) (quoting *Human v. State*, 749 S.W.2d 832, 836 (Tex. Crim. App. 1988)). "The pieces standing alone usually have little meaning." *Id.* (quoting *Human*, 749 S.W.2d at 836). "However, when the pieces are fitted together, they usually form the picture of the person who committed that alleged prior conviction or convictions." *Id.* (quoting *Human*, 749 S.W.2d at 836). "The trier of fact fits the pieces of the jigsaw puzzle together[,]. . . weighs the credibility of each piece[, and] . . . determines if these pieces fit together sufficiently to complete the puzzle." *Id.* If the totality of the evidence shows that the existence of the prior conviction and its link to the defendant "can be found beyond a reasonable doubt, then the various pieces used to complete the puzzle are necessarily legally sufficient to prove a prior conviction." *Id.* "The standard of review for evaluating the sufficiency of evidence requires that the appellate court 'consider all the evidence in the light most favorable to the [fact[-]finder's] finding.'" *Henry*, 509 S.W.3d at 919 (quoting *Wood v. State*, 486 S.W.3d 583, 589 (Tex. Crim. App. 2016)).

Here, the State established the existence of the prior offense with a certified copy of a judgment in cause number 10-1044-CFB from the Third Circuit Court for Columbia County, Florida, entered on April 4, 2011, against "Johnathan Nightingale Tanner" for burglary of a dwelling (the Florida judgment).[1] The Texas Court of Criminal Appeals has recognized that "a certified copy of a final judgment and sentence [is] a preferred and convenient means" of proving that a prior conviction exists. *Flowers*, 220 S.W.3d at 921. The Florida judgment stated Tanner's date of birth as February 23, 1991, and listed his address as "8460 Old Port Gibson Road, Edwards, Mississippi 39066."

At punishment, Trevor Gesik, an investigator with the Gregg County District Attorney's Office, testified that he reviewed Tanner's criminal history and the "TransUnion TLO" database used by detectives and investigators that "compiles all information on people, addresses, social security, date of birth," and other identifying information.[2] When comparing Tanner's jail records with the TransUnion TLO database, Gesik determined that the Florida judgment "show[ed] the date of birth of 2/23 of '91, which is the same date of birth" listed in Gregg County's jail records for Tanner. Gesik confirmed that the Mississippi address on the Florida judgment was "the first address that show[ed] up on the list of addresses" on the TransUnion TLO database. He also opined that the name "Johnathan Nightingale Tanner" was unique.

Viewing the evidence in the light most favorable to the trial court's finding, we conclude that sufficient evidence supported the finding that Tanner had committed the Florida offense.

---

[1]Tanner was sentenced to thirty-six months' imprisonment for the Florida offense.

[2]Gesik discovered that Tanner had a "State ID Number [that was] unique just to" Tanner, because he had been previously arrested in Texas.

The Florida judgment listed Tanner's full name, including his unique middle name, Nightingale. The trial court heard evidence that the Florida judgment also listed the same birth date and address that was tied to Tanner through jail records and the TransUnion TLO database. From this evidence, the trial court could have rationally determined that it was highly unlikely that another person named "Johnathan Nightingale Tanner," with Tanner's same birth date and former address, committed the Florida offense.

After fitting the pieces of the puzzle together, we find the evidence legally sufficient to support the trial court's finding of true to the State's punishment enhancement allegation. As a result, we overrule Tanner's second point of error on appeal.

## III.    Tanner's Complaint About Victim-Impact Testimony Is Unpreserved

The evidence at punishment established that Tanner was previously convicted of criminally negligent homicide for the death of Jamie Healy. Jamie's parents, Jennie and Daniel Healy, testified during the punishment phase of Tanner's trial in this case. In his last point of error on appeal, Tanner argues that their testimony constituted impermissible victim-impact testimony. The State argues that Tanner failed to preserve this point of error, and we agree.

As a prerequisite to presenting a complaint for appellate review, the record must show that Tanner made a timely objection at trial that "stated the grounds for the ruling . . . with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context," and that the trial court either "ruled on the . . . objection, or motion, either expressly or implicitly," or "refused to rule . . . and the complaining party objected to the refusal." TEX. R. APP. P. 33.1(a). "The purpose of requiring a specific objection in the

8

trial court is twofold:  (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it; [and] (2) to give opposing counsel the opportunity to respond to the complaint."  *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009).  As a result, a "point of error on appeal must comport with the objection made at trial."  *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *see Swain v. State*, 181 S.W.3d 359, 368 (Tex. Crim. App. 2005).

At punishment, Jennie testified to the following:

> There isn't a day that goes by that I don't understand and wonder why, what could I have done to save her that morning.  I'm emotional all the time.  I'm taking care of two little boys that should have their mom here.  My world has been turned upside down.  I have lost not just my daughter but my best friend.  And today marks the fourth year anniversary of her death.

After this testimony, counsel objected that he "fail[ed] to see the relevance of [Jennie's testimony]," but his relevance objection was overruled.  Without objection, Jennie continued:

> It has torn us apart.  We used to be very close.  My son has become distant, my youngest daughter over protects her daughters now.  I can't allow [Jamie's sons] just to go outside and play.  I literally have to be right there with them.  I don't let them go anywhere.  They have to be by my side.  I'm too scared to let the boys go anywhere.  I don't go anywhere anymore.[3]

The record shows that, with the exception of the last question asked of Jennie, which she did not answer, counsel either raised no objection to Jennie's testimony or raised only relevance

---

[3]At the very end of Jennie's testimony, the State intended to ask her why she hired private counsel to "get the correct charge."  The State wanted to address that Jennie "didn't believe negligent homicide was the correct offense" and how "that affected her from the actions of Mr. Tanner."  The trial court sustained Tanner's relevance objection and his objection that it "border[ed] on victim impact testimony," thereby ending Jennie's direct testimony.

To preserve error, an objection must be "pursued to an adverse ruling."  *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003).  "It is well settled that when an appellant has been given all the relief he or she requested at trial, there is nothing to complain of on appeal."  *Kay v. State*, 340 S.W.3d 470, 473 (Tex. App.—Texarkana 2011, no pet.) (citing *Nethery v. State*, 692 S.W.2d 686, 701 (Tex. Crim. App. 1985); *Lasker v. State*, 573 S.W.2d 539, 543 (Tex. Crim. App. [Panel Op.] 1978)).

9

or hearsay objections. In other words, with respect to the testimony Tanner complains of on appeal, he made no timely objection on the grounds that it should have been excluded because it was impermissible victim-impact testimony.

The same is true of Daniel's testimony. When asked how the offense had impacted him, Daniel testified, without objection:

> We -- we have moments that we get on each others [sic] nerves quite a bit. I personally don't sleep near as much as I used to. I get angry all the time -- from the day it happened. And the ones I feel the most hurt for is the grandsons and their -- and her mother. I mean, I am just a stepfather, but I raised her from the time she was about six years old. And it hurts me to know that somebody can do this and, in my opinion, pretty much get away with it. That's what causes me more grief than anything.[4]

"To preserve a complaint regarding the erroneous admission of victim-impact evidence for appellate review, the defendant must object on the ground that the evidence constitutes impermissible victim-impact evidence." *Reynolds v. State*, 371 S.W.3d 511, 525 (Tex. App.— Houston [1st Dist.] 2012, pet. ref'd). Objections to testimony at trial on grounds that it is "irrelevant, highly prejudicial, and below the threshold requirement of admissibility" does not preserve an appellate challenge that testimony constitutes inadmissible victim-impact testimony "because the objection at trial does not comport with the complaint raised on appeal." *Karnes v. State*, 127 S.W.3d 184, 195 (Tex. App.—Fort Worth 2003, pet. ref'd). Similarly, an objection that testimony is hearsay fails to comport with an appellant complaint that the testimony is impermissible victim-impact testimony.

---

[4]At the very end of Daniel's testimony, the trial court sustained Tanner's victim-impact objection when the State asked Daniel if there was anything more that he wanted the trial court to consider in assessing Tanner's punishment. The trial court's ruling, which was favorable to Tanner, ended Daniel's direct testimony.

We conclude that Tanner failed to preserve his last point of error for our review. As a result, it is overruled.

## IV. Conclusion

We affirm the trial court's judgment.


Scott E. Stevens
Justice

Date Submitted:      July 27, 2022
Date Decided:        August 19, 2022

Do Not Publish

11